# THE VITALIANO LAW FIRM, PLLC

Michael E. Vitaliano, Esq.
1492 Victory Boulevard
Staten Island, New York 10301
718-273-7800
michael@vitalianolawfirm.com

October 26, 2022

**VIA ECF**
Honorable Jed S. Rakoff
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

                Re:    *United States v. Jatiek Smith*
                      Case No.: 22-CR-352

Dear Judge Rakoff:

      I am counsel to Defendant Jatiek Smith. On September 9, 2022, Mr. Smith was presented on the instant indictment in front of Your Honor. At that time, after hearing arguments from both the government and undersigned counsel, Your Honor found Mr. Smith to be a danger to the community and that no combination of conditions that would protect the community. Mr. Smith remains detained at the Metropolitan Detention Center ("MDC"). As Your Honor may recall, at that time, Mr. Smith proposed a plethora of conditions that, taken together, would have ensured the safety of the community. Those conditions were:

- a $750,000 appearance bond, secured by five (5) financially responsible persons, and Mr. Smith's home.
- The individual bonds are in amounts that would cause significant financial hardship to these sureties if Mr. Smith were to flee.
- Travel restricted to the Southern and Eastern Districts.
- Strict supervision by Pretrial Services.
- Home confinement at his residence with electronic GPS monitoring.
- Surrender of all travel documents with no new applications.
- Random home and work visits and drug testing.
- Such other terms as the Court may deem appropriate under 18 U.S.C. § 3142.

For the foregoing, I respectfully ask Your Honor to reconsider Mr. Smith's pretrial detention.

## APPLICABLE LAW

The detention hearing must be an adversarial hearing, where the defendant may testify as well as present and cross-examine witnesses. 18 U.S.C. §3142(f); see also Fed R. Crim P.46 (j). This statue allows the detention hearing to be reopened at any time before trial where information material to the question of bail surface that "was not known to the movant at the time of the hearing." 18 U.S.C. 3142(f). *United States v. Gotti*, 794 F.2d 773, 780 (2d Cir. 1986). At the time of the hearing, there were a variety of factors that were not known. First, the current conditions at the MDC make it extremely difficult to adequately prepare for trial. Second, this court recently granted a motion that allowed the pretrial release of Mr. Jackson. (See Dkt. 86). A main condition of Mr. Jackson's release, not available to Mr. Smith at the time, was the 24-hour a day video monitoring of Mr. Jackson's home. Finally, after thoroughly reviewing the discovery provided thus far (although there is still a decent amount of outstanding discovery), evidence from Mr. Smith's phone, the same evidence the government used in support of their position that Mr. Smith is a danger to the community, rebuts the government's position that Mr. Smith is a danger to the community.

## PROCEDURAL HISTORY AND NATURE OF THE CHARGES

The indictment alleges that Jatiek Smith and co-defendants corrupted the operations and activities of First Response Cleaning Corp., and other related corporate entities. The defendants and their co-conspirators used First Response as a vehicle to extort other EMS companies, to extort other participants in the fire restoration industry, and to assert control over the industry using violence and threats of violence.

The government alleges in the indictment Mr. Smith commands the primary role in the Enterprise in intimidating victims, demanding extortionate payments from victims, and on several occasions, personally directing other to exact violence on behalf of the Enterprise.

At the outset, it is very important to note that Mr. Smith was determined not to be a flight risk. However, Mr. Smith was found to be a danger to the community. The evidence documented below demonstrates a fuller picture of who Mr. Smith is.  It also rebuts the position that he is a danger to the community.

At Mr. Smith's presentment, the government read a snippet of a self-recorded conversation from Mr. Smith's phone. The court, used this soundbite, as well as other evidence, to determine there was clear and convincing evidence that Mr. Smith was a danger to the community. This entire recording was unknown to counsel at the time, as well as other recordings. It is our position that the court should also consider other recordings recovered from Mr. Smith's cell phone.

For example, in a self-recorded conversation from Mr. Smith's phone, he states, "Whatever y'all n*ggas was doing for all these years, we are not with that man, we are not with that. I told you that when I met with you in the Bronx. I am here for a 9 to 5 that's it, I don't want no problem

with n*ggas, I don't want no smoke with n*ggas. I am here for a 9 to 5 don't turn this shit into something different, man. What I am saying, I'm saying right now everybody can eat together and that's it." This recording was made in response to a phone call placed to Mr. Smith where violence was threatened against him and his family.  first regarding violence against himself and his family which made him react in this manner.

      In further contrast to the government's allegations that Mr. Smith is dangerous, and caused violence once he began working for First Response, It is illuminating to highlight the atmosphere of the fire restoration industry. Attached as Exhibit A are text messages from the First Response chat. This chat precedes Mr. Smith by four years. In this chat, it shows that Mr. Jackson (a co-defendant) was assaulted by another company for a fire. These messages show the violence that was going on within the industry, and not caused by Mr. Smith. In one message, an individual describes being scared to go out at night because he was afraid of his safety. In other messages, there are discussions of assaults and violence for hire. In one particularly disturbing message, after Mr. Jackson was assaulted, Carl Walsh (Owner and CEO of First Response) completely disregarded his safety and told him to "keep his eye on the prize." The new evidence clearly cuts against Mr. Smith being a danger to the community. It is clear owners of First Response exploited young men to wage war in the streets for their profit. These owners have been complicit in violence for years before Mr. Smith began working at first report. To further highlight Mr. Smith's efforts to quell the violence, a point originally made in Mr. Smith's bail memo, in a recorded call, Mr. Smith explained that he has been a gang member for over 25 years and practically raised in jail, this is all he has known from a kid. Despite his history he has shown his willingness to make better choices. In these recordings he has echoed he does not want any problems with anyone, and he does not want to be back in jail.

## CONDITIONS AT THE MDC

      The inhumane condition at MDC detention center is well known and the issues with the lack of staffing violating an array of detainees' rights. Just recently a rally was held by politicians and candidates to call on the federal government to implement strong oversight measures due to the ongoing issue within the facility. Additionally, on more than one occasion, counsel has been turned away from seeing his client. The MDC, because of the increased violence the MDC has been on lockdown on multiple occasions preventing attorney visits. When counsel is able to visit his client, there are times it takes Mr. Smith, more than an hour to be produced this limiting time to prepare for trial. In addition to counsel being turned away, Mr. Smith's private investigator has been turned away for visit overcrowding. Mr. Smith notes that within the jail there is one inmate elevator to transport inmates between floors. It is MDC policy to segregate inmates from different housing and floors to prevent altercations with one another. Within this policy inmates are left to wait for each floor to be transported and secure at their destination before they can be picked up and bought down to the visit floor, this consists of nine floors.

      These issues provide inadequate access to the client to properly prepare for Mr. Smith's upcoming trial date. I have sent legal documents to Mr. Smith twice. He reports to me he has yet to receive them. All specifications have been followed and yet Mr. Smith has yet to receive them. The law library is afforded once a week but not if there is a lock down. As stated previously, these

lockdowns are mostly everyday due. These lockdowns are not lifted and there is no movement during a lockdown for any reason. Since Mr. Smith has been in this facility, he has been on lockdown more than he has been out of his cell. This gives Mr. Smith a serious disadvantage to prepare for trial and no time to go over the enormous amount of discovery. Mr. Smith also reports that the computers in the detention center are not compatible to view a numerous amount of the discovery. There is no remedy for short staffing, which causes a disadvantage to Mr. Smith in preparation for trial.

Mr. Smith, against counsel advice, waived all motions and exercised his rights to a speedy trial. However, at that time, Mr. Smith did not recognize at that time his constitutional rights would be circumvented by the practices and policies of the detention center.

With these conditions, the extreme of amount of discovery that still needs to be reviewed together, the fast-approaching trial date, we respectfully ask the court to grant the release of Mr. Smith with the conditions further described.

## NEWLY PROPOSED CODEFENDANT CONDITION

Mr. Smith is similarly positioned to his co-defendant, Sequan Jackson. As the government alleges, Mr. Jackson was Mr. Smith's "Lieutenant" Mr. Jackson was just released on a $250,000 bond on the conditions of home-confinement and 24-hour video monitoring. Again, as stated previously, the possibility of a 24-hour monitoring was not thought to be an option. However, if that is an option the court is willing to consider, Mr. Smith and his family are willing to wire the home where he would stay under home confinement to allow the monitoring of Mr. Smith.

## PROPOSED CONDITIONS OF RELEASE

A court has four basic options under the bail reform act. It may (1) order the release of the defendant "on personal recognizance or upon executing an unsecured appearance bond"; (2) order the release of the defendant, subject to one or more other conditions designed to assure the defendant's presence and the safety of others; (3) order temporary detention for up to 10 days, excluding weekends and holidays, to allow authorities to take the defendant into their custody in certain other proceedings; (4) order permanent detention based on the risk of flight and/ or dangerousness. See 18 U.S.C. 3142(a)-(e). However, "[e]ven a defendant who is permanently detained may be temporarily released to the custody of a federal marshal or other "appropriate person" where necessary for defense preparation or for another compelling reason." 18 U.S.C. 3142(i).

Mr. Smith is proposing either of the following conditions. Mr. Smith proposes:

- a $750,000 appearance bond, secured by five (5) financially responsible persons, and Mr. Smith's home.
- The individual bonds are in amounts that would cause significant financial hardship to these sureties if Mr. Smith were to flee.
- Travel restricted to the Southern and Eastern Districts.

- Strict supervision by Pretrial Services.
- Home confinement at his residence with electronic GPS monitoring.
- All visitors to be approved by Pretrial Services
- Surrender of all travel documents with no new applications.
- Random home and work visits and drug testing.
- 24/7 Video Surveillance to be installed inside of Mr. Smith's home (Mr. Smith is also willing to install audio capability and access given to Pretrial services.)[1]
- Such other terms as the Court may deem appropriate under 18 U.S.C. § 3142.

## CONCLUSION

Mr. Smith echoes throughout these recordings, he is not trying to go to jail for a "9 to 5". He continuously tries to make better choices for himself, his family and the community. The condition at MDC detention center deprives the defendant of a fair trial. Mr. Smith's constitutional rights are being circumvented by the practices and policies of the detention center. Based upon the aforementioned new evidence and revelations, the Government cannot establish by clear and convincing evidence that there are no combinations of conditions which would protect the community at large. The pretrial release will also ensure that Mr. Smith can adequately prepare for his trial.

Respectfully submitted,

*/s/ Michael Vitaliano*
Michael Vitaliano
Attorney for Defendant
Jatiek Smith

cc: AUSA Rushmi Bhaskaran, Esq. (via ECF and E-Mail)
AUSA Adam Hobson, Esq. (via ECF and E-Mail)
AUSA Mary Bracewell, Esq. (via ECF and E-Mail)
AUSA Elizabeth Espinosa, Esq. (via E-Mail)

---

[1] Access to camera system with audio currently installed at the home where there are no blind spots and remote access available on their phones. Pretrial will have access to the DVR system to set a password which would only be accessible to Pretrial.