```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                             22 Cr. 352 (JSR)

JATIEK SMITH,


              Defendant.
                                           Bail Conference
------------------------------x

                                           New York, N.Y.
                                           November 4, 2022
                                           3:40 p.m.

Before:

                  HON. JED S. RAKOFF,

                                           District Judge

                       APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ADAM S. HOBSON
     MARY E. BRACEWELL
     ELIZABETH ESPINOSA
     Assistant United States Attorneys

THE VITALIANO LAW FIRM, PLLC
     Attorney for Defendant
BY:  MICHAEL VITALIANO


Also Present:
Francesca Tessier-Miller, Pretrial Services
```

1              (Case called)
2              MR. HOBSON:  Good afternoon, your Honor.  Adam Hobson,
3     Mollie Bracewell, Rushmi Bhaskaran, Elizabeth Espinosa for the
4     government.  Also with us is Pretrial Officer Francesca
5     Tessier-Miller.
6              MR. VITALIANO:  Good afternoon, your Honor.  Michael
7     Vitaliano for Jatiek Smith.
8              THE COURT:  Good afternoon.
9              So we're here on a reconsideration of the prior
10    detention of the defendant.
11             Let me state at the outset that I always welcome
12    reconsideration of bail matters because it's a Constitutional
13    right, and one of great importance.  So I'm glad, in that
14    sense, that this motion was made.
15             On the other hand, just to frame the situation, I
16    don't see much difference between the arguments that were made
17    previously and the arguments that are being made now.  There's
18    a suggestion that some of the conversations in which the
19    government relied have a more neutral explanation or even a
20    positive explanation, but on the other hand, that was just one
21    of many factors that the Court to account of.  So I flagged
22    that in advance so that I can have defense counsel respond to
23    that.
24             So let me hear first from defense counsel.
25             MR. VITALIANO:  Judge, I think a lot has changed since

1    Mr. Smith's initial presentment.
2           Number one, a lot of the conversations in which the
3    government relies on are neutral.  In fact, Mr. Smith speaks
4    about wanting to have a 9-to-5 job.  He speaks about wanting no
5    problems in the street.  And I think in a lot of the evidence
6    that we've received it shows that.
7           The other point, your Honor, on how this is different
8    from Mr. Smith's first presentment is the new proposed bail
9    condition with 24/7 -- putting a monitor in the defendant's
10   house.  This defendant now is also proposing audio.  This
11   system would be provided to Pretrial Services.  Pretrial
12   Services would have the sole access to view Mr. Smith.  And I
13   think some of the government's arguments that Mr. Smith is
14   going to intimidate witnesses or threaten witnesses doesn't
15   change just because Mr. Smith is out.
16          THE COURT:  Well, I think their argument all along has
17   been—but I'll hear from them obviously in a minute, but just
18   to get your response—that he was, in effect, the guy playing
19   the top role, directing what was going on.  And that, they
20   would argue, is reasonably inferrable as still going on, even
21   though the intimidation of witnesses that they believe is going
22   on is not being performed by him personally, but by others, but
23   that it's a function of his role.
24          So what about that?
25          MR. VITALIANO:  Judge, as to the intimidation of

1    witnesses, I don't believe any witnesses in this case have been

2    intimidated.  The messages to any witnesses in this case were

3    messages that were asking for character letters on behalf of

4    Jatiek Smith.  Jatiek Smith has never threatened a witness.

5    And there are some recordings where the witnesses themselves

6    come to Mr. Smith and let them know.  Mr. Smith never once

7    intimidated any witness, your Honor.

8               THE COURT:  Let me hear from the government.

9               MR. HOBSON:  Your Honor, that's simply not true.  I

10   don't want to repeat everything I've said at prior bail

11   hearings and in our letter, but what's changed since our last

12   bail argument is that we've been meeting with witnesses, and

13   our evidence against Mr. Smith and our evidence of his threats

14   and the terror he imposed on his victims in the industry has

15   gotten much stronger, if anything.  Our witnesses, as I've said

16   to the Court before, are terrified.  We are meeting with grown

17   men who are sobbing in our office about the prospect of

18   testifying against Mr. Smith because of the years of threats

19   and violence that he imposed on this community.

20              We provided the Court with an excerpt of some of the

21   recordings.  We provided a broader excerpt here because defense

22   said we didn't provide enough context.  He says, I'll kill your

23   kids, I'll kill one of your kids just to send a message, to

24   send a message.  And we know that there are events where he's

25   doing this with guns.  We know that he and his crew held a gun

to a witness's chest and chased that witness.  We submitted our enterprise letter today to the defendant to apprise him of some of the specific assaults we'll be proceeding on.  I think I counted at least 12 specific threats of assaults that he's involved with that we'll be presenting evidence on at trial.  I can't stress how dangerous he was, how scary he was to his victims.

I was just looking at the Pretrial Services' report.  It reported a million dollars of assets that he has despite only being out of jail for a couple of years.  We submit that is evidence of how strong his extortion scheme was and how scared all of these victims were that they were paying him this kind of money over this kind of time.

Since his arrest, witnesses have been reached out to by members of his family.  And I appreciate that Mr. Vitaliano is trying to put a spin on that, but when you are a victim of threats and extortions and you are being asked to testify against this individual and you're getting demands from his family members to provide character letters, that is an implicit threat, that is obstructing justice.  He is charged with obstructing justice and witness retaliation as some of the racketeering elements in this case, so these are not abstract concerns.  These are concerns we have articulated in the indictment.  They're concerns we expect to prove at trial through multiple witnesses who—I cannot stress enough—are

terrified and are rightfully terrified.

THE COURT: All right. Let me hear again from defense counsel.

MR. VITALIANO: Judge, on one of the points that the government made, "the kill your kids" comment was in response to a convicted murderer telling Mr. Smith, I know your mother's address. A lot of the violence they cite is a product --

THE COURT: I'm not sure why that is an excuse. In other words, what you're saying is, in effect, one guy says to him, I'll kill your mother, and he says, Well, before you do that, I'll kill your kids. Doesn't that just show they're both hopelessly violent?

MR. VITALIANO: I think it shows that he was defending himself. He wasn't threatening him because he wanted to harm him. What he said was to protect his family. And I think that cuts against his dangerousness.

I know the government speaks about all the witnesses and how terrified they are of Mr. Smith. If your Honor looked at Exhibit A, the violence in this industry was going on well before Mr. Smith got there. Carl Walsh, in one of those text messages that he receives, one of his employees says, Thank you, boss, but I'm too scared, I can no longer do this job. I think the government tried to make out that Mr. Smith was the one that took over the industry. I just don't think that's correct. And I think that with the new combinations of

1     conditions that I have proposed, I think that would -- I think
2     that would satisfy Pretrial and the Court.
3             THE COURT:  All right.  Well, thank you both for your
4     helpful arguments.  I'm going to leave the situation as
5     previously set, the defendant will continue to be detained.  I
6     think, if anything, that the evidence of his potential danger
7     to the community is even stronger than I thought it was at the
8     time of his original detention.
9             I am grateful to defense counsel for bringing this
10    before the Court.  The door is always open for reconsideration
11    of bail.  I never say, Oh, this is the second time, or the
12    third time, or the fourth time.  You can always come, but I
13    don't think the arguments and the evidence support release at
14    this time.  So that's my ruling.
15            (Adjourned)