```
Mbl3smic
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   UNITED STATES OF AMERICA,
4              v.                            22 Cr. 352 (JSR)
5   JATIEK SMITH,
6                    Defendant.
7   ------------------------------x    Conference
8                                             New York, N.Y.
                                              November 21, 2022
9                                             9:30 a.m.
10
    Before:
11
                      HON. JED S. RAKOFF,
12
                                        District Judge
13
14                         APPEARANCES
15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    ELIZABETH ESPINOSA
17  RUSHMI BHASKARAN
    ADAM HOBSON
18       Assistant United States Attorneys
19
    MICHAEL VITALIANO
20       Attorney for Defendant
21
22
23
24
25

Mbl3smic

        THE DEPUTY CLERK:  Will the parties please identify themselves for the record.

        MS. ESPINOSA:  Good morning, your Honor.  Elizabeth Espinosa for the government, joined by Rushmi Bhaskaran and Adam Hobson.

        THE COURT:  Good morning.

        MR. VITALIANO:  Good morning, your Honor.  Michael Vitaliano for Mr. Smith.

        THE COURT:  Good morning.

        So, Mr. Smith, I asked you to take a few days to think about whether you really wanted to go pro se, which I strongly recommend you do not, but it is your choice.  Or whether you wanted to either stay with your present counsel, see if you qualify for appointed counsel, or I also thought there was at least a possibility that I might be able, even if you didn't technically qualify for appointed counsel, be able to find you counsel who would be willing to take on the matter for free.

        So, what have you decided?

        THE DEFENDANT:  Your Honor, good morning.

        THE COURT:  You need to --

        THE DEFENDANT:  Good morning.

        At this point I will try to take on counsel.  To see --

        THE COURT:  You want new counsel or you want to stick with your old counsel?

1           THE DEFENDANT:  I want new counsel.

2           THE COURT:  All right.  So then the question becomes,
3  first, whether the defendant qualifies for appointed counsel.
4  My recollection, but I'll hear from the government, is that
5  although he initially indicated that he had a net worth of a
6  little over a million dollars, or that was the pretrial
7  services' estimate, this consisted of a $890,000 home, but that
8  had a $530,000 mortgage, then there was 500,000 in what was
9  listed as "business accounts."  And so I'm not quite sure what
10 his current financial situation is.

11          Does the government have anything to add?  And then
12 I'll inquire of the defendant and his counsel.

13          MS. ESPINOSA:  Your Honor, we don't have any
14 additional information on that right now.  It might make sense
15 for the defendant to fill out the financial affidavit, that --

16          THE COURT:  I want to get this going.  So, Mr. Smith,
17 tell me about your current financial situation.

18          THE DEFENDANT:  Well, as I explained to pretrial, the
19 money that I had in my business accounts, I had to put back
20 into restoring homes back.  So, it was a little over $600,000.
21 And if the Court wants, my wife could furnish the checks that
22 have been going out, probably over $500,000 had went out into
23 put -- getting people's homes back together.  So that, as I
24 explained to pretrial, that money wasn't mine.

25          THE COURT:  So, let's put it a different way.  If you

Mbl3smic

were going out, hiring a new attorney, would you be able to pay for a new attorney?

THE DEFENDANT:  If a new attorney asked for anything under $30,000, which is in my personal account, then I would be able to pay for a new attorney.  If they wanted anything under 30,000.

THE COURT:  But nothing more.

THE DEFENDANT:  No.

THE COURT:  So I don't think responsible counsel would take on a case like this that was so complicated and involves all the many reasons why I put the case over to May 1st for $30,000, anything remotely like that.  So, it sounds to me like Mr. Smith may well qualify for appointed counsel.

Now, we do have to get the form filled out.  Let me take a look at it first.

So, I'm going to give this to you in a minute, Mr. Smith, to fill out.  But, just to go through the questions. First question is are you now employed.  Normally I think you would have checked that self-employed.  But, obviously you're not employed or not able to be out there earning money at this time.  So I think as a practical matter, you could answer that "no."

Are you married?

THE DEFENDANT:  Yes.

THE COURT:  Does your wife work?

Mbl3smic

1  THE DEFENDANT:  At this time, no.
2  THE COURT:  Okay.  So you could fill out that part
3  "no."
4  Do you have cash in bank accounts at this time?
5  THE DEFENDANT:  Yes.
6  THE COURT:  How much?
7  THE DEFENDANT:  About $30,000.
8  THE COURT:  Okay.  You own real estate, etc., and
9  other property, but as I understand it, at least the home has a
10  very large mortgage, so its real value is considerably less and
11  it's nominal.  Yes?
12  THE DEFENDANT:  Yes.
13  THE COURT:  So, why don't I have my courtroom deputy
14  hand this to you.  You are restrained.  But I'll ask your
15  present counsel to write in your answers as Mr. Smith verbally
16  gives it to you.  So we'll take a minute to do that.
17  (Defendant conferring with his counsel)
18  MR. VITALIANO:  Judge, may I sign for the defendant?
19  THE COURT:  Pardon?
20  MR. VITALIANO:  May I sign the form for the defendant?
21  THE COURT:  Hand it up first and then I'll allow that.
22  I just want to take a look first.
23  Okay.  This looks fine.  Let me hand it back to
24  defense counsel.
25  And Mr. Smith, you're authorizing your counsel to sign

Mbl3smic

1  this on your behalf since you gave him the information; yes?
2         THE DEFENDANT:  Yes.
3         THE COURT:  Very good.
4         All right.  Let me sign this.
5         So, in a moment I'm going to appoint counsel.  The CJA
6  counsel, the counsel on duty today to take cases is Mr. Nooter.
7  He is a very experienced lawyer, I think you will be very happy
8  with his representation.
9         But I should say that I've seen nothing but the
10 highest professionalism from Mr. Vitaliano.  I'm basing my
11 determination here in part on the letter which I've now
12 received.  I hadn't seen it before.  But Mr. Smith's letter.
13 It's an impressive letter.  Among other things, it shows
14 Mr. Smith is a highly intelligent person who writes very well.
15 I was impressed.  But it also shows that he and his current
16 counsel are really at total loggerheads, and it makes sense,
17 therefore, to relieve Mr. Vitaliano.
18        Mr. Vitaliano, do you have any objection to that?
19        MR. VITALIANO:  No, Judge.
20        THE COURT:  Okay.  So I will relieve Mr. Vitaliano and
21 appoint Mr. Nooter who will be in touch with you, Mr. Smith,
22 promptly.
23        Regarding the letter, I should note, well, first,
24 before I get to the letter, I should note that regardless of
25 the form that we just filled out, the ultimate standard for

appointment of CJA counsel is whether a person is "financially unable to obtain adequate representation," 18 U.S.C. Section 3006(a).

And based on everything I know about this case now, and also, based on my own experience as a former criminal defense lawyer for 15 years who knew then and still has some understanding now of what the economics of that kind of practice are, I think Mr. Smith would not at this point be able to obtain adequate counsel. So, independent of the form, I think he qualifies for appointed counsel.

Now, I'm delighted that Mr. Smith has wisely chosen not to go pro se. But I should also note that in the letter he sent me, which I had not received at our last hearing but I did receive this past Friday, he says the following: "I know that I need an attorney to represent me at trial. I don't want to have to go pro se. I can't see the discovery or get a good visit with my investigator, so it wouldn't do any good trying to go pro se." And I think that's exactly correct. But I wanted to note for the record that that was what the defendant had expressed in the letter he sent me.

Now, Mr. Smith, you also make a number of requests. Your new counsel, you should show this letter to your new counsel and advise him of any requests that you have, because I really can't operate from letters from parties. I need to hear it from counsel. But I'm sure that we can work out something

Mbl3smic

1    to accommodate most of your requests.  I thought some of them
2    at least were very reasonable, like your desire to have a Bible
3    with you and things like that.
4              So, unless there is anything else anyone wants to
5    raise.  Oh, I should note for the record that when Mr. Smith
6    originally sought to have a speedy trial, he had expressly
7    waived his right to bring motions.  Now that the trial has been
8    put off until May 1st, he does have a right through his new
9    counsel to bring motions.  And the new counsel will find out
10   we've extended the time for that until February, so there will
11   be plenty of time to bring any motions that your new counsel
12   believes should be brought.
13             All right.  Anything else that anyone wishes to raise
14   at this time?
15             MS. ESPINOSA:  No, thank you, your Honor.
16             MR. VITALIANO:  No, thank you, your Honor.
17             THE DEFENDANT:  No.
18             THE COURT:  Very good.  Thanks a lot.
19             (Adjourned)