UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

        - v. -                                    22 Cr. 352-1 (JSR)

JATIEK SMITH, et al,,

        Defendants.
-------------------------------------------------------X

## DECLARATION OF COUNSEL

      THOMAS H. NOOTER, being an attorney duly licenced to practice law in the States of New York and California, and in the Courts of the United States, does hereby declare under penalty of perjury and pursuant to 28 U.S.C. §1746, that the following is true:

      1.  I am a member of the CJA Panel for the Southern District of New York, and was appointed on November 21, 2022 by this Court to replace retained counsel of record for the defendant JATIEK SMITH.

      2.  I am filing this declaration in support of my motion to suppress the fruits of a search of his cellular telephone conducted at Newark Airport when my client was rejected from entry into Jamaica, West Indies, and returned on the same airplane to the United States, and the fruits of other searches and eavesdropping that was conducted after warrants were obtained primarily using evidence taken from the search of the telephone at Newark Airport. (See Exhibit A attached to the Motion to Suppress made by co-defendant Sequan Jackson, also under seal).

      3. Attached to this motion is a declaration by the defendant, Mr. Smith, stating that he did not consent to any search of his cellular telephone when he was stopped by HSI officers at Newark Airport on March 2, 2021, and that he only provided the password to the phone after

being threatened with being detained indefinitely. His account is largely supported by assertions made in a declaration submitted to Magistrate Judge Stewart D. Aaron of this District, by HSI Special Agent William Clark dated April 9, 2021. (**Exhibit A**, 21 MAG 3891 warrant affirmation, pages 6 and 7, USAO_000328 and 000329 [Filed UNDER SEAL because of protective order with respect to discovery in this case]. That application was to review the contents of the downloaded copy of the cellular telephone that had already been downloaded without a warrant and without consent of Mr. Smith at Newark Airport on or within a few days of Mr. Smith's arrival at the airport on March 21, 2022 (the phone was returned to Mr. Smith after the download several days after the HSI officers took it from him at the airport). The affidavit states in part:

> 14. On or about March 2, 2021, at approximately 7:00 a.m., HSI was notified that SMITH was boarding a plane going from Newark International Airport to Jamaica. A few hours later, HSI was informed that SMITH was returning from Jamaica that same day and would be landing at Newark International Airport at approximately 5:00 p.m. At approximately 5:00 p.m., officers with Customs and Border Protection located and detained SMITH at Newark International Airport. The officers searched SMITH's bags and located just under $10,000 in cash. SMITH also had an Apple iPhone with IMEI No. 353897100042680 and with IMSI No. 310260240063546. Special Agents with HSI seized SMITH's phone pursuant to HSI's border search authority and requested SMITH's passcode, which SMITH eventually provided. HSI then extracted a forensic copy of the phone contents, which forensic copy is the Subject Device. The phone was returned to SMITH. (**Exhibit A**, page 6, paragraph 14).

    4. The affidavit of SA Clark implies, without actually stating so, that an investigation of crimes in which Mr. Smith was considered a perpetrator had begun before Mr. Smith was stopped at Newark Airport. Many of the factual allegations made to support a finding of probable cause relate to events that occurred prior to Mr. Smith's being stopped, but the affidavit does not actually say that the information was obtained prior to March 2, 2021. (See **Exhibit A**, pages 3

through 6, Discovery stamp 000325 – 000328).

5. As quoted above, the affidavit states that: "On or about March 2, 2021, at approximately 7:00 a.m., HSI was notified that SMITH was boarding a place going from Newark Airport to Jamaica. A few hours later, HSI was informed that SMITH was returning from Jamaica that same day and would be landing at Newark International Airport at approximately 5:00 p.m." (Discovery, Bates Stamp USAO 000328). The affidavit does not say who notified HSI of that information or why, or whether the notification was the result of an ongoing investigation of Mr. Smith or for some other reason which would not have provided probable cause (or reasonable suspicion) in connection with the current charges pending against him.

6. In the same affidavit SA Clark states that "an initial and preliminary review of the Subject Device showed ..." which shows that prior to obtaining the warrant to look at the already-downloaded image of the contents of the cellular phone the agents looked at what it would show. It is not clear whether this was a superficial examination of what can be seen on the phone without doing the more extensive download of the "image" of the telephone (which may have legal significance, as discussed infra), or whether they looked at the "image" they were now seeking a warrant to examine. It is also not clear what level of probable cause or reasonable suspicion, if any, the agents had to examine either the "superficially" available information on the phone or the downloaded image contents.

7. After the filing of that affidavit the Magistrate Judge issued a warrant to look at and analyze the downloaded image taken from Mr. Smith's phone. Using information seen on the phone they later applied for other warrants – pen register, eavesdropping, and search warrants – using affidavits in which they referred to information obtained from the Smith phone download

as part of the basis of probable cause for obtaining these additional warrants. See, for example, the warrant application made under docket number 21 Mag 11049, dated November 17, 2021, at pages 3 – 5, where reference is made to what was seen on the "forensic copy" of the phone seized at Newark Airport on March 2, 2021. (Discovery Bates Stamp USAO 000370 – 000372).

      8. The U.S. Department of Homeland Security has issued a CBP (Customs and Border Patrol) Directive No. 3340-049A dated January 4, 2018, governing the procedures to be followed by Homeland Security Officers in conducting border searches of electronic devices including "mobile phones." (See **Exhibit B**, attached). The directive follows the guidance of cases from the Fourth and Ninth Circuits which have held that a "deep" search into the contents of an electronic device, even when conducted at the border, requires at the very least "reasonable suspicion," (as opposed to most border searches which do not require any level of suspicion or probable cause). Here it is not clear whether this was a border search since Mr. Smith did not leave the airport area in Jamaica and was returned to the United States on the same airplane he had arrived in some 45 minutes earlier. If it is, however, the law states that agencies are required to follow their own procedures even where the constitutional law or statutes may not impose such a requirement.[1] The Directive divides search types into "Basic" and "Advanced." The latter is defined as:

> "...any search in which an Officer connects external equipment, through a wired or wireless connection, to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its contents. In instances in which

---

[1] "A valid legislative rule is binding upon all persons, and on the courts, to the same extent as a congressional statute. When Congress delegates rule making authority to an agency, and the agency adopts legislative rules, the agency stands in the place of Congress and makes law." *National Latino Media Coalition v. Federal Communications Commission*, 816 F.2d 785, 788 (D.C. Cir. 1987).

there is reasonable suspicion of <u>activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern</u>, and with supervisory approval at the Grade 14 level or higher (or a manager with comparable responsibilities), an Officer may perform an advanced search of an electronic device. Many factors may create reasonable suspicion or constitute a national security concern; examples include the existence of a relevant national security-related lookout in combination with other articulable factors as appropriate, or the presence of an individual on a government-operated and government-vetted terrorist watch list." (**Exhibit B**, emphasis added.]

9. In this case the creation of the "forensic" copy of the cellular phone required the connection of the phone to a device to make the imaged copy. Moreover, the forensic image was made, according to the Affidavit based on the following:

> 15. Special Agents with HSI performed an initial and preliminary review of the Subject Device. The preliminary review of the Subject Device showed, revealed, among other things, that the Subject Device contained what appear to be communications in which the user of the phone identifies himself as a member of the Bloods and discusses Bloods gang activity. The Subject Device also contained what appeared to be discussions of SMITH's work with First Response, including communications in which he discusses his remuneration arrangement and the "rules" about responding to fires, as well as communications with what appeared to be either insureds or public adjusters about submitting fraudulent insurance claims. (**Exhibit A**, 21 MAG 3891 warrant affirmation, pages 6 and 7, USAO_000328 and 000329 [Filed UNDER SEAL because of protective order with respect to discovery in this case].)

While these reasons may relate to the investigation of the defendant for his role in the First Response fire mitigation company, it had nothing to do with the reason he was crossing the border from Jamaica, or the other reasons stated in the CBP Directive.

10. The downloaded forensic image of the phone made on March 2, 2021 was used extensively as the basis for other warrants, particularly the eavesdropping warrant obtained in this case. See the Memorandum of Law filed by co-defendant Sequan Jackson (Document 140 on the docket of this case, 22-cr-352 (JSR) at pages 1 and 2). The heavy reliance on the forensic

download is apparent in the discussion by SA Clark in his October 14, 2021 affidavit.

11. Please see the Declaration of Mr. Smith himself, and any references to the operation of the alleged racketeering activity made in the Affidavits for Search and Eavesdropping Warrants submitted under seal by Mr. Smith (Exhibit A) and co-defendant Sequan Jackson as exhibits to the motion to suppress the evidence seized pursuant to the Title III warrant.

WHEREFORE, counsel respectfully requests the Court grant the relief sought in the Notice of Motion filed herewith.

Dated: New York, New York
       February 15, 2023

 /s/ *Thomas H. Nooter*
THOMAS H. NOOTER
Attorney