UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

        - v. -                         22 Cr. 352-1 (JSR)

JATIEK SMITH, et al,,

        Defendants.
------------------------------------------------------X

DECLARATION OF DEFENDANT

JATIEK SMITH, does hereby declare under penalty of perjury and pursuant to 28 U.S.C. §1746, that the following is true:

1. I am the lead defendant in the above-captioned matter, and I am submitting this declaration in support of the motions being filed by my attorneys pursuant to Rule 12 of the Federal Rules of Criminal Procedure, specifically for the suppression of contents of my cellphone seized by HSI officers at Newark Airport and copied, for the suppression of other evidence seized using information taken from that cellphone (as "fruits of the poisonous tree"), and for dismissal of the charges against me because they are the product of an impermissible selective prosecution.

2. I am making these statements based on my own knowledge.

Motion to Suppress

3. In March of 2022 I attempted to fly to Jamaica, West Indies, for a vacation but was denied entry, supposedly based on having a criminal record. I never left the airport and never retrieved my personal items and baggage. After about 45 minutes, Jamaican authorities put me

with my property back onto the same airplane and sent me back to Newark Airport. When I got back to Newark Airport, I was stopped by Customs and my luggage was searched. Because I was not admitted into Jamaica, I do not believe I crossed the border of the United States.

4.  Upon being stopped in Newark I was told had to put my cell phone on "airplane mode." The agent then held my cell phone in his hand and told me that I had to give them the password so they could look at the contents. I refused and was told that if I persisted with my refusal I could be arrested and charged. I still refused. I was then surrounded by agents. I became irate and told them they would have to kill me before I would give them my password. The agent then told me that the Patriot Act allows him to search my phone without a warrant and that if I did not open the phone I could be held without charge for as long as it took to open the phone.

5. The agent told me they were looking for child pornography and that they would only be looking in my pictures. I informed them that I have personal sexually-explicit videos and photos in my "photos folder" on my phone and that I was not okay with them looking at them. He told me they have a special computer program that only looks for child pornography. He would not be looking at the photos themselves.

6.  I knew I did not have any child pornography on the phone, but I still refused. The agents held me at the airport and told me I was not free to go. After continued threats, I unlocked my cell phone. They did not give it back that day. A few days later, I was given my phone back.

7.  I want to be clear that I only provided the password to open the phone under duress because the agents were threatening to hold me indefinitely. I also was not told they intended to copy all of the contents of the phone. I would never have consented to that.

Motion to Dismiss

8. I am a black-skinned man, and my co-defendants are all black-skinned or men of Hispanic origin.

9. All of my co-defendants, including myself, are alleged to have had some connection with the Bloods street gang.  Not all of us were members; some of us are alleged to have been connected with the gang because of their friendships with those who admitted their membership in the gang.

10. I was formerly a member of the Bloods.  I renounced my membership in 2014.

11. I was incarcerated from 2014 until 2017.

12. When I was released on May 22, 2017, I was determined to start a new and law abiding life.

13. In October, 2019, I went to work for Carl Walsh the owner of First Response an emergency mitigation services (EMS) company located in Brooklyn, New York.  My job was to listen to a scanner for fires and go to the fire and attempt to get it "signed up" for First Response. I worked from 8:00 p.m. to 6:00 a.m. each day. I did not know or work with any public adjusters until I was made a manager later.

14. From the first day that I started work, I saw that there was fierce competition among the EMS companies and that owners of the companies and the people who worked for them -- almost entirely white men none of whom, to the best of my knowledge,  had any gang connection  -- settled their differences about who would be credited with the business by using threats of violence, violent, kickbacks and other illegal conduct.

15. The only people who are being prosecuted are the minorities who the government alleges had in their past some connection with the Bloods street gang.

I, JATIEK SMITH, have read the foregoing declaration and affirm that the statements made therein are true to the best of my knowledge and recollection.

_____
JATIEK SMITH