UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ UNITED STATES OF AMERICA,            │
│                                      │
│         -v-                          │
│                                      │
│ JATIEK SMITH ET AL.                  │
│                                      │
│         Defendants.                  │
└─────────────────────────────────────┘
```

22-cr-352 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

Defendant Jatiek Smith moves for reconsideration of this Court's prior orders on 9/9/22 and 11/4/22 denying him release on bail on the grounds that he remains a danger to the community. See Mem. Supp. Bail Mot., Dkt. 134-3 ("Smith Mem."). He makes two primary arguments: first, that Mr. Smith's continued detention violates a provision of the Speedy Trial Act that sets a 90-day presumptive limit for persons held in detention awaiting trial, 18 U.S.C. § 3164, and second, that various serious health issues are not being adequately treated while Mr. Smith is being held in federal custody, Smith Decl. ¶¶ 11-15, Dkt. 134-2. At a pre-trial in-court conference held on 3/7/23, this Court denied Mr. Smith's motion for bail. This Opinion explains the reasons for that decision.

**I.  Mr. Smith is not entitled to release under the Speedy Trial Act.**

In general, federal courts make bail determinations pursuant to the Bail Reform Act of 1984, which provides for pretrial detention when a judicial officer finds after a hearing "that no condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community
. . . ." 18 U.S.C. § 3142(e). Smith, however, argues he is entitled
to release under a separate federal statute -- the Speedy Trial Act -
- that also contains a provision relating to pretrial detention. The
relevant provision states that "[t]he trial or other disposition of
cases involving— (1) a detained person who is being held in detention
solely because he is awaiting trial . . . shall commence not later
than ninety days following the beginning of such continuous detention."
18 U.S.C. § 3164(a)-(b). However, the statute also states that excluded
from this 90-day calculation are "[t]he periods of delay enumerated
in section 3161(h). . . ." Id. § 3164(b). And 18 U.S.C. § 3161(h), in
turn, sets forth a host of exclusions that thus apply both to Section
3164's 90-day pretrial detention clock and the Speedy Trial Act's more
commonly known 70-day limit within which a defendant's trial is
supposed to commence. 18 U.S.C. § 3161(h).

### A. Procedural History and Background

Resolving Mr. Smith's claim for release under the Speedy Trial
Act requires some background. Mr. Smith was arrested in Puerto Rico
on June 28, 2022, and at an initial appearance that day before
Magistrate Judge Giselle Lopez-Soler, Smith was ordered detained
pending his removal to this district. See Smith Rule 5(c)(3) Documents,
Dkt. 37. No decision was made to exclude time under the Speedy Trial
Act as to him at that time. Id. Mr. Smith's co-defendants were arrested
the same day and presented in this district before Magistrate Judge
Aaron, who excluded time under 18 U.S.C. § 3161(h)(7) through 7/5/23,

when the defendants other than Smith -- who was in transit between Puerto Rico and this district -- were set for a pretrial conference. See Docket entries dated 6/28/22. At the 7/5/22 conference -- at the uniform request of defense counsel then in attendance, and given both the difficulty of coordinating schedules across attorneys for nine defendants and the sheer complexity and scope of this case (as to which the Government described "voluminous" discovery, "include[ing] a lot of electronic records, multiple months of wire calls, [and] several seized phones that we are still within the process of unlocking. . . ." as well as the results of interviews from "over 25 victims"), this Court set a trial date for 5/1/23, ordering that: "[p]ursuant to Section 3161 of Title 18, I will exclude from calculations all time between now and May 1, 2023, finding such time is necessary for the completion of the voluminous discovery, the evaluation of the discovery, the meeting with the defendants under these difficult circumstances, and the drafting of any motions as well as subsequent trial preparation, and the accommodating of counsels' various schedules." 7/5/22 Hr'g Tr. at 15-16, Dkt. 50.

Later, the Court received a letter written by Mr. Smith and dated 7/29/22 stating that, against the wish of his lawyer, he "wish[ed] to waive [his] rights to file any motions and proceed to a speedy trial." See 7/29 Smith Letter, Dkt. 40. The Court subsequently received substantially identical letters from Smith's codefendants Rahmiek Lacewll, Anthony McGee, Sequan Jackson, and Damon Dore. See Dkt. 43, 53, 54, 55. The Court scheduled an all-defendant conference to discuss

these requests for 9/13/23, given that Smith was not expected to arrive in New York until the beginning of September.

Smith was arraigned on 9/9/23, just after he finally arrived in this district. At that time, after Smith reiterated his request for a speedy trial in person, the Court severed Smith's trial from his co-defendants and set a trial for October 17 and excluded time between 9/9/23 and 10/17/23. 9/9/23 Hr'g Tr. at 5, Dkt. 156. The Court also denied Smith's bail request after the Government described some of the evidence against Smith, including threats of violence against potential witnesses and their families -- finding that no conditions other than Smith's detention could reasonably assure the safety of the community. Id. at 19.

At the 9/13/23 all-defendant conference, the Government requested -- and Smith and those other co-defendants then also requesting a prompt trial did not oppose -- that the Court postpone the 10/17/23 trial set for Smith to November. See 9/13/22 Hr'g Tr. at 7, Dkt. 89. The Court accordingly set a trial date of 11/28/22, which Smith, Jackson, Dore, and Lacewell elected to take, while all other defendants preferred to stick with the original 5/1/22 trial date. Id. at 6-18; 9/13/23 Order, Dkt. 72. For those defendants set for an 11/28/22 trial, the Court specifically excluded time under the Speedy Trial Act, "finding that it represents a fair accommodation of both the requests of the government and the requests of the defendants, as well as the underlying speedy trial and preparation for trial issues, and that for those and other reasons the best interests of justice in excluding all

time through November 28 as to the defendants who are requesting a speedy trial is appropriate . . . " 9/13/23 Hr'g Tr. at 17. After the release on bail of several of his co-defendants, Smith moved again for release on bail, and the Court once again denied that motion on the grounds of dangerousness following the Government's detailing evidence of Smith's threats towards victims and potential witnesses and toward their families, including children. 11/4/22 Hr'g Tr. at 7, Dkt. 109. Defendants Lacewell and Dore subsequently withdrew their requests to proceed to trial on 11/28/22 and elected to instead proceed with the trial set for 5/1/23. See 10/24/22 Letter, Dkt. 85; 10/28/22 Letter, Dkt. 88.

On 11/14/22 -- two weeks before the 11/28/22 trial was set to commence against Smith and his codefendant Sequan Jackson -- the Court received a letter from Susan Kellman, Jackson's attorney, stating her belief that Mr. Jackson could not possibly have a fair trial if the trial were to begin on 11/28/22. See 11/14/22 Kellman Letter, Dkt. 102. Her letter represented that -- even putting aside voluminous evidence she was continuing to receive at that time from the Government and the defendants' coordinating discovery counsel -- the volume of discovery already produced made it "impossible to adequately investigate and prepare to effectively represent Mr. Jackson at trial" on 11/28/22. Id. at 1. She noted that "[t]he charged conduct here spanned three years and allegedly affected the practices of dozens of EMS companies and public adjusters in New York City," that "[i]n the fourteen months before the grand jury returned the indictment in this

case, the government had already interviewed dozens of witnesses, seized and mirrored the lead defendant's cellphone and intercepted months-worth of Mr. Jackson's and Mr. Smith's communications," that 3500 material had been produced "for more than forty witnesses," and that despite her and her co-counsel's diligence in reviewing these materials, it would be impossible to provide Mr. Jackson with constitutionally effective assistance of trial by 11/28/23. Id. at 1-2. She also noted the expectation that the Government would call experts and her inability to find any rebuttal experts who could testify at the 11/28/23 trial, the technological challenges of processing the sheer volume of telephone data provided by the Government into a usable form, and the challenges of conducting an adequate investigation of the allegations -- including by interviewing involved people in the industry -- prior to the 11/28/23 trial. Id. at 3. Ms. Kellman expressed her sensibility that by filing this letter, notwithstanding her client's continuing wish to go to trial by 11/28/23, she might be "irreparably damage[ing] the attorney client relationship," but nonetheless expressed her "firm and unwavering assessment" that she and her co-counsel could not provide Mr. Jackson with constitutionally effective representation by 11/28/23. Id. at 4.

Later that day, Mr. Smith's then-attorney, Michael Vitaliano, filed a similar letter "join[ing] in" the letter filed by Ms. Kellman for "for the reasons stated therein." 11/14/22 Vitaliano Letter, Dkt. 103. Mr. Vitaliano further argued that in addition to all the reasons cited by Ms. Kellman as to why a fair trial could not possibly occur

on 11/28/23, there was one more that applied only to Smith: the fact that Mr. Smith's detention coupled with then "near daily lockdowns" at MDC made it challenging to even meet with Mr. Smith to go over evidence and prepare for trial.[1] Id.

The Court promptly convened back-to-back conferences, first with Ms. Kellman and Mr. Jackson, then with Mr. Vitaliano and Mr. Smith. During Mr. Smith's conference, Mr. Smith repeatedly emphasized that even if his lawyer felt he could not represent him by 11/28/22, Mr. Smith was prepared to do so pro se. 11/17/23 Hr'g Tr. at 3. Convinced that neither Mr. Jackson nor Mr. Smith could receive a fair trial on 11/28/22 or any time soon thereafter, the Court granted the motions by counsel for Mr. Jackson and Mr. Smith, and set both defendants for the all-defendant 5/1/23 trial. It made separate on-the-record findings as to both defendants as to why a fair trial could not take place before then and therefore excluded time under the Speedy Trial Act through 5/1/23. See 11/17/22 Hr'g Tr. at 5, 7, Dkt. 131. It also restored both defendants' right to file pre-trial motions, which they had earlier waived in order to proceed to a faster trial. Id. As to Mr. Smith's request to proceed pro se, the Court determined that this did not affect the determination that Mr. Smith could not have a fair trial by 11/28/23 -- if anything, Mr. Smith, proceeding pro se and

---

[1] As this Court has repeatedly emphasized during bail hearings for numerous defendants in this case, counsel having issues receiving adequate access to their clients should promptly involve the Government and, failing that, this Court, which will ensure that such access is provided.

while detained, would need even more time to adequately prepare than his lawyer would -- and therefore informed Mr. Smith that his trial would be on 5/1/22 whether or not he determined to go pro se. Id. at 3. The Court then gave Mr. Smith some time to consider his request to go pro se, and, at an 11/21/22 conference, Mr. Smith withdrew his request to go pro se but requested new counsel, which this Court appointed (Mr. Smith's prior counsel having been relieved). See 11/21/23 Hr'g Tr. at 2-3.

### B. Legal Analysis

Through his new counsel, Mr. Smith now argues that his detention has exceeded the 90-day limit set for pretrial detention in 18 U.S.C. § 3164 and that he should therefore be released on bail. See generally Smith Mem. He does not presently argue that the presumptive 70-day clock for trials set forth in 18 U.S.C. § 3161 has been violated and that the indictment against him should therefore be dismissed under 18 U.S.C. § 3162(a)(2), although various of his arguments carry obvious implications for that question. Id. at 6.

Mr. Smith's argument requires separate consideration of three different time periods: the time between his 6/28/22 arrest in Puerto Rico and his 9/9/23 arraignment in New York, the time between the 9/9/23 arraignment and the 11/17/22 conference (during which the Court excluded time first on 9/9/22 through the 10/17/22 trial date it initially set and then on 9/13/22 through the 11/28/22 trial date it subsequently set, without any objection by Smith), and finally from

11/28/22 through the expected 5/1/23 trial. The Court addresses these
from most to least recent:

### 1. The Court's 11/17/23 decision to exclude time through the 5/1/23 trial.

Mr. Smith contends that the Court's 11/17/23 decision "over his
objection" to reset him for a 5/1/23 trial and to exclude time through
that date "was not reasonable, given the fact that Mr. Smith was being
held in custody." Smith Mem. 14.

The Court recognizes the toll pretrial detention exacts on all
defendants, very much including those who wish to make their case at
trial, and it did not previously order Mr. Smith's detention lightly.
The Court is also aware that defendants' constitutional[2] and statutory

---

[2] Smith has not argued that his May 1 trial date violates his
Sixth Amendment right to a speedy and public trial, and while the
Court would ordinarily seek to ensure that a trial commence sooner
following a defendant's arrest, the less-than-one year period
between Smith's arrest on 6/28/22 and the expected trial on 5/1/23
is not so long as to trigger constitutional scrutiny, especially in
a case like this involving very serious potential liability, immense
legal and factual complexity, and numerous codefendants. See United
States v. Moreno, 789 F.3d 72, 78 (2d Cir. 2015) (reasoning that
although the Sixth Amendment right to a speedy trial turns on "four
factors . . . : length of delay, the reason for the delay, the
defendant's assertion of his right, and prejudice to the defendant,"
the " first factor, the length of delay, also operates as a
threshold inquiry"); id. at 82 n.10 (stating that the threshold
inquiry is "usually" triggered by a "one year" delay). Moreover,
even if a Sixth Amendment inquiry were triggered, the relatively
modest length of the delay for the purpose of ensuring a fair trial
for Mr. Smith would mean no right was violated. Id. at 78. If the
delay were longer than one year, such that a Sixth Amendment inquiry
were triggered, the Court is not certain that a defendant's
constitutional speedy trial rights could be waived by that
defendant's lawyer in the same way that, as explained below, a
lawyer may request a continuance under the Speedy Trial Act against
her client's wishes. Cf. Townsend v. Superior Court, 543 P.2d 619,
624 (Cal. 1975) (reasoning that a while a lawyer could waive various

rights to a speedy trial carry special force when a defendant is detained pending trial. However, as eloquently put by both Mr. Smith's then counsel, as well as by present counsel for Mr. Smith's co-defendant Sequan Jackson, defendants have the right not to just a speedy but also to a fair trial -- including with constitutionally competent counsel -- and the Court remains as convinced as it was on 11/17/22 that Mr. Smith could not have received a fair trial on 11/28/22 or at any time for several months thereafter given the unique and complicated nature of this case. See Kellman Letter, Dkt. 102; Vitaliano Letter, Dkt. 103.

As explained above, counsel for Mr. Jackson and then-counsel for Mr. Smith represented that it would be utterly impossible to represent their clients fairly at an 11/28/22 trial given the many factors rendering this case extraordinarily evidence-intensive and complex, including:

- The fact that the charged conduct spans three years and concerns alleged extortion against dozens of emergency mitigation services ("EMS") companies;

- The fact that the Government has provided evidence from over 40 potential witnesses;

- The fact that gigabytes of discovery have been turned over, including months of wiretaps and the contents maintained over extended periods of multiple cellphones, which were apparently so voluminous that defendants' joint coordinating discovery counsel could not even convert the relevant data into a readable form until 11/11/23, and which could

---

statutory speedy trial rights, he could not waive constitutional ones). However, as the delay here does not come close to a constitutional question, the Court need not reach that question.

obviously not be reviewed by any defendant or team of defense
counsel without very significant investments of time;

- The fact that the Government may call expert witnesses on
cell-site location and gang activity, and the need to locate
and prepare qualified defense experts.

Given such factors, it almost goes without saying that this case
is "so complex, due to the number of defendants," "the nature of the
prosecution," plainly "novel questions of fact" and arguably novel
questions of law[3] such that it would ordinarily be "unreasonable to
expect adequate preparation for pretrial proceedings or for the trial
itself within the time limits established by this section." 18 U.S.C.
§ 3161(h)(7)(B)(ii). See United States v. Pikus, 39 F. 4th 39, 53 (2d
Cir. 2022) ("Cases are 'complex' where they, for example, involve
numerous defendants, novel legal issues, myriad claims, or many
necessary witnesses."). Despite Mr. Smith's representation that some
of the "gigabytes" of discovery involves "irrelevant material," such
as "personal photos" contained on the numerous cellphones whose
contents have been produced, Smith Mem. 14, the Court remains convinced
for the reasons described above -- which were articulated forcefully
to the Court by not just one but two lawyers prepared to speak even
against the wishes of their clients -- that "the failure to grant . .

---

[3] Mr. Smith, availing himself of the extended timeline now
afforded him, has filed a motion to suppress evidence raising very
serious and arguably novel questions of law relating to cell phone
searches at the border. See Smith Mem. Suppress, Dkt. 161.

. a continuance in the proceeding would [have been] likely to . . . result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).

What makes this case a little unusual is that Mr. Smith, notwithstanding his then-lawyer's belief that he could not have provided constitutionally competent representation absent a significant continuance and this Court's agreement that, at the very least, a significant continuance was necessary to ensure the fairness of any trial, objected to such a continuance. This Court does not take lightly overriding a defendant's personal request to proceed to trial more quickly. But the Speedy Trial Act plainly authorizes continuances to be "granted by any judge on *his own motion*," and likewise authorizes such continuances "at the request" not just "of the defendant" but also of "his counsel." Id. § 3161(a). Indeed, in separately naming both "the defendant" and "his counsel," the Speedy Trial Act contemplates situations such as this one where the two might have different views as to the desirability of a continuance and authorizes the Court to grant one nonetheless.

This understanding finds support in Second Circuit precedent. See United States v. Lynch, 726 F.3d 346, 353 (2d Cir. 2013). Lynch, noting the Speedy Trial Act's separate identification of a defendant and "his counsel," reasoned that "an attorney may make such a request without obtaining his client's approval." Id. (quoting 18 U.S.C. § 3161(h)(7)(A)) (emphasis in original). As a result, the Second Circuit held "that, pursuant to 18 U.S.C. § 3161(h)(7)(A), a district court may grant a continuance sought by counsel without the consent of the

defendant so long as the district court determines that the ends of justice would be served based upon its analysis of the factors articulated in 18 U.S.C. § 3161(h)(7)(B) and sets forth its reasons on the record." Id. at 356.

Mr. Smith's views as to any extension certainly merit significant weight. But Mr. Smith faces very serious charges in this case, with each count charged against him and his co-defendants carrying potential sentences of up to 20 years. 18 U.S.C. §§ 1951, 1963. Mr. Smith, as the alleged leader of the charged conspiracy, likely faces among the most serious consequences of any of his co-defendants. Given the nature of this case, the explicit representations of Mr. Smith's prior counsel and Mr. Jackson's counsel that they could not have provided constitutionally competent representation by 11/28/22 or any time soon thereafter, and this Court's independent satisfaction that these lawyers' representations were reasonable in light of the complexity of this case, the Court concludes that its 11/17/22 decision to set Mr. Smith for a 5/1/23 trial and exclude time under the Speedy Trial Act was reasonable.

### 2. The Court's exclusion of time through 11/17/22

Mr. Smith also objects to the Court's exclusion of time from Mr. Smith's 9/9/22 arraignment and the 11/17/22 conference (when the Court reset Mr. Smith for trial), arguing that no party requested the exclusion of such time and that there should have been no separate exclusion under 18 U.S.C. § 3161(h) for "preparation for trial," as

that is the point of providing 70 days in the first place. Smith Mem. at 16. The Court easily rejects this argument.

A judge may exclude time under the Speedy Trial Act "on his own motion. . . ." 18 U.S.C. § 3161(h)(7)(A). And while the Court's explanations for its exclusions (on 9/9/23, through 10/17/23, and then on 9/13/23, through 11/28/22) made reference to "preparation for trial," it was clear on both occasions that the Court, while inclined to grant Smith's request to proceed to trial quickly, nonetheless believed the case was quite complex within the meaning of 18 U.S.C. § 3161(h)(7), such that exclusion of small amounts of time through October or November was entirely justified. See 9/9/22 Hr'g Tr. at 5, 10; 9/13/23 Hr'g Tr. at 5-6, 10, 12, 15-17. As such, the Court easily concludes that its exclusion of time from Mr. Smith's 9/9/22 arraignment and the 11/17/22 conference was proper.

### 3. Mr. Smith's transfer from Puerto Rico to New York

The Court must finally consider the (rather lengthy) period between Mr. Smith's 6/28/22 arrest in Puerto Rico and his 9/9/22 appearance in this district, a period that apparently involved delays in transfers due to COVID-19. For the purposes of 18 U.S.C. § 3161's 70-day clock for trial, this period does not matter, as the clock begins to run "from the filing date (and making public) of the information or indictment, *or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs*." 18 U.S.C. § 3161(c)(1) (emphasis added). Further, as the Government points out, at least for the purposes of §

14

3161's 70-day clock, "cases involving multiple defendants are governed by a single speedy trial clock," and the Court had already separately excluded time at the 7/5/22 conference for all defendants other than Mr. Smith. United States v. Pena, 793 F.2d 486, 489 (2d Cir. 1986).

However, unlike Speedy Trial Act's primary 70-day limit for beginning trial, 18 U.S.C. § 3164's 90-day limit set for a defendant's detention pending trial begins to run not on the day of the indictment or when the defendant appears in the district in which the charge is pending, but rather from "the beginning of such continuous detention. . . ." 18 U.S.C. § 1964(b). Here, there is no dispute that Mr. Smith has been continuously detained since his 6/28/22 arrest.

The Court is not convinced that the Government is right that, as to Section 3164's 90-day limit for continuous detention pending trial, the Second Circuit's decision interpreting Section 3161 as setting forth "a single speedy trial clock, which begins to run with the clock of the most recently added defendant" applies. Pena, 793 F.3d at 489. Pena was based on language in 18 U.S.C. § 3161(h)(6) providing for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Pena held that the period it took to apprehend various co-defendants was properly excluded under 18 U.S.C. § 3161(h)(6) so long as the period of exclusion remained "reasonable," such that, in multi-defendant cases, Section 3161's 70-day clock would start to run for all defendants from the date of the most recent defendant's arraignment. 793 F.3d at 488-89.

It is hard to see how or why <u>Pena</u> should apply to 18 U.S.C. §
3164, which sets a 90-day limit for pretrial detention that runs not
from the date of anyone's indictment or appearance but rather from the
"beginning of such continuous detention or designation. . . ." <u>Id.</u> §
3164(b). While <u>Pena</u> might support tolling Mr. Smith's co-defendants'
70-day Speedy Trial clocks under Section 3161(h)(6), the Government
does not explain why or how <u>Pena</u> authorizes the tolling of § 3164's
90-day detention clock from when it plainly began running following
Smith's 6/28/23 arrest through his September appearance in this
district, based solely on exclusions that were made for his co-
defendants. Nothing in the text of 18 U.S.C. § 3161(h)(6) -- which
relates to the delay that might be needed in order to join codefendants
"as to whom the time for trial has not run" -- or in <u>Pena</u> suggests
that such tolling is permissible.

However, the Court need not decide whether, in a multiple
defendant trial, the 90-day detention clock under 18 U.S.C. § 3164
runs separately for all defendants or, as with 18 U.S.C. § 3161's 70-
day clock, runs as a single clock. Even assuming the former, that
would mean Smith was detained 73 days between his 6/28/22 arrest and
his 9/9/22 arraignment in this district when the Court first excluded
time for Smith (and when, for the purposes of Section 3161's 70-day
clock, Smith's time would have begun to run). As such, given the
Court's proper exclusions of time from 9/9/22 onward, Smith has not
been detained for over 90 days of countable time pending trial under
18 U.S.C § 3164.

## II.  Smith's medical issues

Finally, Smith describes a number of serious medical issues he claims are not being adequately addressed by the Metropolitan Detention Center ("MDC"). Smith Decl. ¶¶ 11-15. Since Smith first filed his motion, this Court has convened multiple joint calls between the Government and Smith's attorneys to request updates as to Smith's care. See Minute Entries dated 2/14/23, 2/15/23, 2/24/23. In each of those calls, the Government has provided an update as to current efforts to deal with Mr. Smith's care, and Mr. Smith's counsel has not requested further court involvement -- although the Court remains willing and ready to become involved to the extent Mr. Smith's needs are not being dealt with adequately and promptly. In his reply, Mr. Smith acknowledges that he has received some care, including appointments with an MDC doctor and a promise of an offsite visit to a specialist, as a result of the Government's involvement. Smith Reply at 4-5, Dkt. 165. However, he contends that his care remains "completely inadequate," that the specialist offsite visit had not yet materialized by the time of filing, and that MDC is not set up to provide the care he needs. Id. at 5.

The Court recognizes that pretrial detention at the MDC imposes very serious burdens, including on defendants requiring serious medical care, that MDC is not always readily able to provide. However, in this case, it appears that Mr. Smith began receiving at least relatively more of the care he claims he needs once his lawyers got the Government involved. To the extent his care remains inadequate,

Mr. Smith's lawyers should jointly call Chambers with the Government to provide a full update as to where things currently stand and to request the Court's involvement, if necessary, to expedite further medical care at the MDC.

However, the Court remains fully convinced for the reasons previously stated on the record during the 9/9/22 and 11/4/22 bail hearings "that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e); see 9/9/22 Hr'g Tr. at 19, Dkt. 156; 11/4/22 Hr'g Tr., Dkt. 109 at 7. As discussed at those hearings, the Government has introduced serious prima facie evidence that Mr. Smith has directed and threatened numerous acts of violence, including at potential witnesses and their family members. The Court has a very real fear that, should Mr. Smith be released, he might not just pose a general threat to the community but also perpetuate or threaten violence against witnesses in this case.

Mr. Smith in his reply brief notes that given the availability of contraband cellphones in MDC, he likely could have intimidated witnesses from there if he had wanted to. Smith Reply at 6. It turns out that that he may have done just that. As recounted by the Government at a 3/7/23 conference, a contraband cellphone was found in Smith's possession and seized, and the Government subsequently obtained a warrant for its search. While that search has been paused in order to conduct a privilege review following the discovery of potentially privileged information, the preliminary review -- before any

potentially privileged material was found -- indicated that Smith, using an illegally possessed phone, has been in personal communication with his released co-defendants even though this is prohibited by the terms of his pre-trial detention and has sought to influence them, among other things, to be in contact with third parties that may be either witnesses themselves or in contact with third party witnesses. While the information about what Smith was doing with this phone remains preliminary, these events only reinforce the Court's independent belief that Mr. Smith's release -- which, no matter what conditions this Court orders, would certainly lead to Smith having relatively greater ability to communicate with potential witnesses and co-defendants without detection -- poses too great a danger to the community to be allowed.

For all the aforementioned reasons, the Court hereby reaffirms its denial of Smith's motion for release on bail. The Clerk is directed to close the motion on the docket (at entries 133 and 134).

SO ORDERED.

New York, NY
March 10, 2023

JED S. RAKOFF, U.S.D.J.