

Russell Capone **Via ECF**
T: +1 212 479 6580
rcapone@cooley.com

November 14, 2023

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:    United States v. Jatiek Smith, 22 Cr. 352 (JSR)**

Dear Judge Rakoff:

By appointment of the Court, the undersigned is standby counsel for Jatiek Smith, who is proceeding to trial pro se. Mr. Smith has asked me to convey to the Court that he respectfully requests that the Court appoint me to be defense counsel rather than standby counsel, and further requests an adjournment of trial in order to give me time to properly review the voluminous history and discovery in this matter and to prepare his defense. Should the Court deny this request, Mr. Smith still seeks an adjournment of the trial in order to properly prepare his own defense. This afternoon, I conferred with counsel for the Government, who oppose these requests and intend to submit a letter to the Court explaining the bases of its opposition.

**I.    Mr. Smith Requests that Russell Capone be Appointed as Defense Counsel**

Pursuant to this Court's Order, I currently serve as standby counsel to Mr. Smith in advance of his trial scheduled to begin on November 27, 2023. Mr. Smith has asked that I convey his request for me to be appointed as defense counsel. I explained to Mr. Smith that I would be willing to do so if the Court approved but that I could not effectively represent him unless the trial were adjourned, which Mr. Smith was comfortable with. More specifically, Mr. Smith has asked me to convey the following reasons in support of his request:

Most importantly, while Mr. Smith acknowledges that he is not an attorney and will as a result have inherent difficulty preparing for trial and defending himself, his ability to do so is particularly compromised because of his conditions of confinement in the SHU. Mr. Smith has had limited access to computer time leading up to his trial. This Court's Order requiring Mr. Smith to access the computer for a minimum of 7 hours per day went into effect on 11/6 (Dkt. No. 282), but MDC has not been in compliance with the Court's Order.[1] For example, Mr. Smith was not permitted to access the computer room to review discovery on

---

[1] Given the minimal computer time he has had to date and the fact that he is proceeding pro se, Mr. Smith also argues that the seven hours of computer time Ordered by this Court in its September 25, 2023 Computer Time Order (Dkt. No. 282) is an insufficient amount of time for him to adequately prepare his defense. Mr. Smith requested that I convey that non-SHU prisoners are permitted to be out of their cells between 6:00AM-3:30PM and between 5:00PM-9:45PM, and that he believes that he should be permitted Discovery Room and computer access for the entirety of the time he would be allowed to spend outside his cell if he were not in SHU so that he can adequately prepare his defense.

# Cooley

The Honorable Jed S. Rakoff
November 14, 2023
Page Two

10/24; 10/28; 10/29; 10/31; 11/2; 11/3; 11/4; or 11/5.  On November 11 and 13, Mr. Smith only had access to the computer for 3 hours.  On November 12, Mr. Smith was not permitted to access the computer at all, in violation of this Court's Order.

What is more, on days when Mr. Smith does get access to the Discovery Room, his preparation session is ended as soon as he needs to use the restroom or eat something, and he is not allowed to return to the Discovery Room.  This has resulted in Mr. Smith being in extreme physical pain while he prepares his defense as he tries to maximize the amount of time before he is returned to his cell.[2]  Mr. Smith understands that there is significantly reduced staffing at MDC on weekends and on holidays that prevent him from accessing the computer during those times and has particular concerns about the shortage in staffing given that the trial is set to begin the Monday after the Thanksgiving holiday.

Mr. Smith also requested that I convey that he has not, to date, been provided with any access to computers with law library capabilities.  The computers in the Discovery Room do not have law library capabilities, so even when Mr. Smith is allowed access to the Discovery Room, he is not allowed access a computer that has research capabilities.  Mr. Smith believes that his inability to access the law library severely inhibits his ability to defend himself.

Additionally, Mr. Smith has found the government's "Sensitive" designation paired with the very voluminous 3500 material and the SHU prohibition on power cords to seriously inhibit his ability to defend himself.  While the Government has agreed to de-designate much of the previously designated "AEO" / "Sensitive" materials, a significant amount of 3500 materials remain designated as "Sensitive" and therefore cannot be reviewed outside the presence of an attorney, including 3500 materials for certain cooperating witnesses (including phones for cooperating witnesses) and 3500 materials for testifying lay witnesses.  The "Sensitive" material also consists of many audio/video files which must be shown to Mr. Smith on a computer.  The SHU's prohibition on power cords (and the fact that there are no outlets in the SHU visiting rooms generally) means that Mr. Smith's standby counsel can only show documents as long as the computer has battery, even despite this Court's Order permitting Mr. Smith's counsel to bring a power cord (Dkt. No. 204).[3]  Moreover, Mr. Smith is shackled during SHU visits, so he cannot turn pages for himself or take notes (nor does the Protective Order seem to allow Mr. Smith to take notes of Sensitive materials).[4]  The combination of these factors makes the review of Sensitive materials—which are extremely important to Mr. Smith's case—a inefficient and time-consuming process that cannot physically be accomplished in the time remaining before trial.

Finally, even with respect to materials that are no longer marked "Sensitive," Mr. Smith is still working to obtain all non-designated materials.  Mr. Smith alerted standby counsel that he was missing

---

[2] Mr. Smith writes: "On November 7, 2023 at approximately 3:30PM I made the SHU Cos Sano, Arshaud, McCray and others that I'm not sure of their names aware that I needed to use the bathroom and I would like to eat and get some water.  I have been sitting here for about four hours.  I yelled over and over for assistance.  Someone yelled back, 'you want your seven hours and you're getting it.'  I believe this is retaliation for my complaints."

[3] For example, during a November 5, 2023 visit, the standby paralegal's laptop died while showing documents marked Sensitive to Mr. Smith.  While Mr. Smith appreciates that many of the "Sensitive" materials have been de-designated, the ability to use a power cord is still necessary for Mr. Smith to productively review the 3500 materials that remain designated as Sensitive with standby counsel.

[4] *See* Dkt. 45 at 3 ("Sensitive disclosure material…shall not be copied or otherwise recorded by the defendants.").



The Honorable Jed S. Rakoff
November 14, 2023
Page Three

certain non-designated materials and standby counsel is working to get those to Mr. Smith. Mr. Smith also does not yet have other materials which were previously designated as "Sensitive" or "AEO" but no longer are. While the Government has agreed to help facilitate the delivery of such data to Mr. Smith—for example, the Government today sent Mr. Smith a hard drive with non-designated cell phone materials—the process and logistics of tracking down these materials and getting them to Mr. Smith at MDC has been slow and, to date, Mr. Smith has not yet received a significant portion of those materials, which he will also need to review to prepare for trial.

Mr. Smith concludes that, when he agreed to defend himself pro se, he did not appreciate quite how difficult it would be to prepare for trial while incarcerated in the MDC SHU. Mr. Smith believes that he will be significantly prejudiced—and that he would not receive the fair trial to which he is constitutionally entitled—should he be required to proceed to trial in two weeks pro se. He therefore requests both that I be appointed counsel to represent him and that the trial be adjourned. In the event that I am appointed counsel, I respectfully request the ability to confer with the Government and the Court on the appropriate time frame for a trial.

Finally, and for many of the same reasons, should the Court deny Mr. Smith's request to appoint me as counsel, Mr. Smith still requests that an adjournment be granted to allow Mr. Smith more time to prepare his defense and to work through the ineffective processes at MDC. To effectuate that end, Mr. Smith requests that the Court (i) order that he be permitted access to the SHU discovery room and to a computer with law library access, from 6:00AM-3:30PM and between 5:00PM-9:45PM daily; (ii) order that his preparation not be interrupted should he need to take a reasonable break to use the bathroom or eat a meal; and (iii) re-order the MDC to permit standby counsel and the standby paralegal to bring a power cord into the MDC and make available for standby counsel-meetings a room with an outlet.

II. **A Letter from Mr. Smith**

Mr. Smith provides the following remarks concerning his request for an adjournment and appointment of counsel:

It is with great regret that I come to the Court and ask for a continuance.

I can not properly prepare to defend myself in these conditions. On Saturday 11-11-23 I was not given the minimum 7 hours of discovery. On Sunday 11-12-23 I was not brought out at ALL. I asked CO Chen to take me out he said no! and he doesn't care, call the Lt. I then seen the 7th floor counselor S. Bennett along with a female staff member I did not recognize. I made him aware of the situation and asked him to please get the Lt. No Lt. ever came.

I refrained from applying the usual method to get results while in SHU, such as block the window, kick the door, hold the slot, hold the cuffs etc…that would have only led to more SHU time. And more degradation.

As explained already I have not yet seen all the undesignated discovery, but now I'm going to be given even more discovery that is in the realm of voluminous. At this time I am forced to humble myself and gracefully bow out. I can not be ready before the November 27th trial date.

- Standby counsel and standby paralegals have to read everything to me. I am shackled and cuffed so I can not take notes and I have to read their lips.
- Many portions of the discovery in my possession does not open, to big to open on these computers, won't play, etc.



The Honorable Jed S. Rakoff
November 14, 2023
Page Four

- My mental health is deteriorating in these conditions. My anxiety and depression is beginning to peak. I have not spoken to my kids in over a month. I'm not allowed to have pictures of my family in SHU
- Physically I'm in pain. My headaches persist. I have still not had any further treatment for my throat
- Spiritually I'm down

In all of these proceedings I have not once asked for more time. I come to you now and ask that I be granted more time to be able to defend myself!

Reading through documents generated by the AUSA and Court, I would like to address this on my behalf. The Court deemed me a danger to the community and has serious concerns about witness tampering. I have been to trial before and my co-defendants testified against me, along with other witnesses that I personally know. You can google the case. The Staten Island advance wrote it as "Gang leader set frere by lies of a witness." I know all to well what kinds of things will be done in the name of securing a conviction.

Never the less, as explained before I was on bail that case. And judge Rooney made it clear that I would be sentenced consecutively which would have totaled 75 years. I showed up every day and when deliberations went through the weekend I showed up Monday morning! My co-defendant Ronald Ross lives 6 blocks from me with his mother, girlfriend, child. I seen his family every day. Jamie Jones lived down the street. I seen his sister "every day" that I took my kids to day care. Raymond Banks. His father and my mom hangout at least twice a week even now, as I write this. Kahseem Moye, his mom's backyard was connected to my backyard! And this is at a time when I was really in the streets when I placed value in this gang shit. I didn't threaten or hurt any ones family. Even after being released from prison I have seen them all on many occasions (except Moye). And I didn't do anything to them (I did heckle Jamie Jones and Raymond Banks). All their family still live in the same places. The Lord helped me to let some of it go.

I just want to understand with all this going on in the streets what does my absence lend to the safety of the community? Crime did not start with me and it's not ending because I'm sitting here.

I wasn't pushing poison in my community. I wasn't destroying my community any more. Most of all I was a father! A real father! I had my kids 15 days out of every month without fail. Never less! Only more! I promoted fatherhood among my peers! So when you all think I'm fighting for myself please understand I am only fighting for my kids especially to keep my boys out of this system's clutches.

You'll look at this as career boosters and conviction rates. All this serves is to perpetuate the hate and animosity in our neighborhoods. Nothing about this helps to protect the family dynamic. It destroys us as a whole. I have said many times in this court, I'm fighting for my life, and my children's lives.

With that being said, I have no choice but to sit here longer. If you do not grant the continuance then I'm stuck where I'm at. Either way your honor you have been more than fair. And I thank you on me and my families behalf.

I need more time and would like Mr. Capone appointed to be my counsel.

As I have made the Court aware, I only did not accept new counsel because the date was already set. Now I'd rather go through forward with counsel navigating these complex issues.



The Honorable Jed S. Rakoff
November 14, 2023
Page Five

### III. Conclusion

      For these reasons, Mr. Smith respectfully requests that the Court appoint me as defense counsel and grant an adjournment to allow me to adequately prepare Mr. Smith's defense.  Should the Court deny Mr. Smith's request to appoint me as counsel, Mr. Smith respectfully requests that the Court (a) grant Mr. Smith an adjournment in order to allow him adequate time to prepare his own defense; and (b) to effectuate that end, Mr. Smith requests that the Court (1) order that he be permitted access to the SHU discovery room and to a computer with law library access, from 6:00AM-3:30PM and between 5:00PM-9:45PM; (2) order that his preparation not be interrupted should he need to take a reasonable break to use the bathroom or eat a meal; and (3) re-order the MDC to permit standby counsel and the standby paralegal to bring a power cord into the MDC and make available for standby counsel-meetings a room with an outlet.[5]


Sincerely

/s/ Russell Capone


Russell Capone

cc:

Rushmi Bhaskaran
Marguerite B. Colson
Elizabeth A. Espinosa

---

[5] Should the Court approve Mr. Smith's request, standby counsel can submit a revised Power Cord Order (Dkt. 204) updating the names on the Power Cord Order to reflect the names of Mr. Smith's newly appointed standby counsel.