UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    -v-<br><br>JATIEK SMITH et al.,<br><br>          Defendants. | |

22-cr-352 (JSR)

<u>MEMORANDUM ORDER</u>

JED S. RAKOFF, U.S.D.J.:

　　Before the Court is the motion of *pro se* defendant Jatiek Smith requesting a bench trial. *See* Dkt. 296. Federal Rule of Criminal Procedure 23(a) provides that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." The Court has indicated that it approves Smith's request, but the Government has refused to consent.

　　This, however, does not end the matter, for the Supreme Court has noted that, notwithstanding the language of Rule 23(a), there may be "circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial jury." *Singer v. United States*, 380 U.S. 24, 37 (1965). While subsequent precedent makes clear that a court should overrule the Government's objection to a bench trial only sparingly, the Court finds that this is just such an exceptional case. Several significant circumstances, including the need to try the defendant in shackles, the defendant's marked anger management issues and psychological

1

infirmities, and the defendant's apparent decision to proceed *pro se*,[1]

separately and collectively create a substantial and unavoidable risk

that defendant will be subject to undue prejudice if his case is tried

before a jury, while a bench trial would virtually eliminate this

prejudice. The Government's essentially inexplicable decision to

object to a bench trial effectively denies the defendant his due

process right to a fair trial. Accordingly, for the reasons set forth

below, the Court grants defendant's request for a bench trial over the

Government's objection.

**I.**

---

[1]     Last night, as this Opinion was being finalized, the
defendant made a last-minute request (which has yet to be docketed)
for a further adjournment of his long-delayed trial, which was firmly
scheduled to begin on November 27, 2023. As the Government points out
in its opposition (which also was not docketed), this is nothing more
than a continuation of a ploy that the defendant has repeatedly used
in the past to delay these proceedings, all the while expressing a
desire for a speedy trial. His latest request for adjournment is
particularly sinister given his history of witness intimidation and
the fact that it was made just after he received sensitive 3500
material regarding cooperating witnesses. The defendant, who is
currently proceeding *pro se*, tries to buttress his adjournment request
by claiming that he now wants his "standby" counsel to be appointed
as his full-time counsel, with the understanding that such appointment
would necessitate a substantial adjournment so that such counsel could
get up to speed. As the Government points out, this is nothing but
gamesmanship. As detailed below, the defendant has repeatedly made
clear that he will not stick with any counsel who does not follow his
instructions to file frivolous motions, make frivolous objections, and
the like. So, this is nothing but a cover for continuing to proceed
*pro se.* In any event, defendant's last-minute request for adjournment
of the trial, appointment of full-time counsel, and the other relief
set forth in the defendant's letter of November 14, 2023 is hereby
denied in full.

On October 30, 2023, the defendant filed a multi-part motion seeking various forms of relief, including that the Court order that his case be tried before the Court, rather than a jury. *See* Dkt. 296. On October 31, 2023, the Court indicated to the parties that it was prepared to grant Smith's request, subject to the Government's consent. On the same day, however, the Government submitted a letter stating that "[a]fter carefully considering Smith's request for a bench trial, the Government does not consent," but providing no further explanation. Dkt. 298.

The Court then issued an Order on November 3, 2023, expressing concern that a bench trial was necessary to ensure Smith received a fair trial and directing the Government to explain why the Court should not overrule the Government's objection to a bench trial. *See* Dkt. 300. The Order explained that the Court's concerns were based on (at least) three factors: (1) the Marshals' informing the Court that defendant would need to be tried in shackles, (2) defendant's marked history of anger management issues, and (3) the substantial likelihood that defendant, who had at that point firmly elected to proceed *pro se*, would be subject to frequent reprimands before the jury because of his strongly held but frequently erroneous views of the law. *Id.*

The Government filed its response on November 7, 2023. *See* Gov't Opp. (Dkt. 306). In its response, the Government persisted in its objection to a bench trial, but still failed to offer any explanation for its refusal to provide consent. Instead, it simply argued that "[t]here are reasonable, appropriate, and well-established measures

[other than a bench trial] that can ensure that the defendant receives a fair and impartial trial." *Id.* at 5.

## II.

The United States Constitution provides that "[t]he Trial of all Crimes . . . shall be by Jury," U.S. Const. Art. III, § 2 cl.3, and grants criminal defendants "the right to a speedy and public trial, by an impartial jury," U.S. Const. amend. VI. The Supreme Court has recognized that these provisions were "clearly intended to protect the accused from oppression by the Government." *Singer v. United States*, 380 U.S. 24, 31 (1965). Accordingly, an accused can waive his right to a jury. *See Patton v. United States*, 281 U.S. 276, 312 (1930), *abrogated on other grounds by Williams v. Fla.*, 399 U.S. 78 (1970). And given the Supreme Court's clear statement that the historic purpose of these provisions is to protect the accused from governmental oppression, it follows that the Government's invocation of its Rule 23 "right" to refuse consent to a defendant's request for a bench trial has little to no constitutional backing. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 574 n.13 (1977) ("[T]he prosecution has no constitutionally sanctioned interest in receiving a verdict from the jury . . . .").

Indeed, in *United States v. Singer*, where the defendant requested a bench trial but the Government, invoking Rule 23, refused to consent, the defendant went so far as to argue that Rule 23 was unconstitutional because a criminal defendant has "the right to waive a jury trial whenever he believes such action to be in his best interest, regardless

of whether the prosecution and the court are willing to acquiesce in the waiver." 380 U.S. at 25. The Supreme Court rejected such a broad proposition, finding "no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury -- the very thing that the Constitution guarantees him." *Id.* at 36. But the Court acknowledged that there may be "circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial." *Id.* at 37.

Based upon this language in *Singer*, a number of district courts have overruled the Government's refusal to consent to a defendant's request for a bench trial. *See United States v. Cohn*, 481 F.Supp.3d 122 (E.D.N.Y. 2020); *United States v. Schipani*, 44 F.R.D. 461, 463 (E.D.N.Y. 1968); *United States v. Lewis*, 638 F. Supp. 573, 579 (W.D. Mich. 1986); *United States v. Braunstein*, 474 F. Supp. 1, 17-18 (D.N.J. 1978); *United States v. Panteleakis*, 422 F. Supp. 247, 250 (D.R.I. 1976); *see also United States v. Moon*, 718 F.2d 1210, 1218 (2d Cir. 1983) ("Certainly we recognize, though, that there might be cases where the circumstances are so compelling that for the court to countenance the government's insistence on a jury trial over the defendant's request to be tried by a judge alone would deny the defendant a fair trial."). While, as might be expected, each of these cases is unique, what they have in common is a recognition that

*Singer*'s suggestion that a defendant may insist upon a bench trial over prosecutorial objection has real force.

To be sure, the case law also makes clear that a Court may not overrule the Government's objection to a bench trial where other remedial measures are sufficient to mitigate the risk of prejudice identified by a defendant. *See, e.g.*, *United States v. U.S. Dist. Ct. for Eastern Dist. of Cal.*, 464 F.3d 1065, 1071 (9th Cir. 2006); *United States v. Caramadre*, 2012 WL 4762189, at *2-3 (D.R.I. Oct. 5, 2012). But to overcome the Government's objection, a defendant need not show that it would be impossible to receive an impartial jury trial; if that were the case, the defendant would simply be entitled to dismissal of the indictment, since the defendant has a constitutional right to insist on a jury trial, and the caveat in *Singer* would be meaningless. *See* Jon Fieldman, Singer v. United States *and the Misapprehended Source of the Nonconsensual Bench Trial*, 51 U. Chi. L. Rev. 222, 232-241 (1984). Rather, where a substantial and unavoidable risk of prejudice remains even after all reasonable measures are taken, a trial judge may, in its discretion, overrule the Government's objection. *See, e.g., Schipani,* 44 F.R.D. at 463 (overruling Government's objection where "[t]here [was] a substantial danger that the defendant will be severely prejudiced if he is tried before a jury"); *Panteleakis*, 422 F. Supp. at 250 (overruling Government's objection where "[t]he government ha[d] not attempted to rebut the inference that substantial prejudice is practically impossible to avoid under these circumstances").

### III.

Three independent circumstances make this the exceptional case where the Government's insistence upon a jury trial creates a substantial and unavoidable risk that defendant will be denied his right to a fair trial.

*First*, the United States Marshals have recommended that, for the safety of all concerned, defendant be shackled for the duration of the trial due to his propensity for violent outbursts (further described below), and the Government has expressly deferred to the Marshals' judgment in this regard. *See* Gov't Opp. (Dkt. 306), at 5 n.1. Indeed, the Government has itself repeatedly emphasized that Smith is violent and poses a substantial danger to the community,[2] and has underscored Smith's involvement in this very case in witness tampering and intimidation of victims.[3] The Court has also learned from the

_____

[2]    *See, e.g.*, Gov't Opp. to Def's 1st Bail App. (Dkt. 91), at 1 ("Many of the defendants in this case pose a danger to the community, but the danger posed by Jatiek Smith surpasses each of them. He was the leader of this violent extortion crew, and for at least two years he used violence and threats to terrorize the fire restoration industry."); Gov't Opp. to Def's 2d Bail App. (Dkt. 162), at 17 ("[Smith] has a long and violent criminal history, and upon his most recent release from jail, he used violence, threats of violence, and intimidation to extort the fire mitigation industry, intimidate witnesses, and obstruct justice. This Court has twice held that Smith poses a danger to the community that cannot be addressed by even the most restrictive bail conditions.").

[3]    *See, e.g.*, Gov't Opp. to Def's 2d Bail App. (Dkt. 162), at 2 ("Smith has also solidified his control over the industry with witness tampering and obstruction of justice, threatening victims not to speak to the authorities about his violence."). This also raises the very real possibility that if there were to be a jury trial in this case, the Court would have to consider impaneling an anonymous jury, thus raising further constitutional problems. *See United States*

Government, the Marshals, and the prison authorities of the defendant's repeated resort to violence even while incarcerated (detailed below). It follows that the Court has no choice but to order the defendant shackled throughout his trial, and hereby so orders.

But if this is a jury trial, the likelihood that the jury will see defendant in shackles creates a problem of constitutional dimensions. The Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). "This rule has deep roots in the common law" and dates back to before the time of the founding. *Id.* at 626 ("The law has long forbidden routine use of visible shackles during the guilt phase . . . ."). The risk that a jury will be impermissibly swayed by such visible manifestations of incarceration conflicts with the "presumption of innocence" that is "a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503-04 (1976) (holding it unconstitutional to compel a criminal defendant to appear at trial in prison attire).

The Second Circuit has made clear that, even where a district court determines the use of restraints is necessary, "the Court must

---

*v. Thomas*, 757 F.2d 1359, 1363-65 (2d Cir. 1985). These problems can be fully resolved by a bench trial.

take steps to minimize any prejudice to the defendant from being tried in physical restraints." *United States v. Haynes*, 729 F.3d 178, 190 (2d Cir. 2013). Here, the most simple and effective measure to minimize the prejudice attendant upon the use of restraints would be to hold a bench trial. *See Comer v. Schriro*, 463 F.3d 934, 963 (9th Cir. 2006) (noting that "the risk of prejudice" from visible shackles "is lessened" where a judge sits as the trier of fact), on reh'g en banc, 480 F.3d 960 (9th Cir. 2007). The Government nevertheless insists that the risk of prejudice can be adequately addressed if draperies are placed around both tables such that the restraints would not be visible to the jury. Gov't Opp. (Dkt. 306), at 5. Even setting aside the real possibility that the jury, in moving between the jury room and the jury box, will still catch sight of the shackles, the Court finds the reliance on draperies to be inadequate here, given, *inter alia*, the defendant's tendency toward uncontrollable outbursts and his exercise of his constitutional right to proceed *pro se*, two factors to which Court now turns, that combine with Smith's violent tendencies not only to make it highly likely that the jury will see him in shackles, but that they will be independently prejudiced by these additional problems.

*Second*, Smith, though clearly competent to stand trial, has severe personality difficulties that make it challenging for him to regulate his behavior. As a result, the defendant has had multiple altercations with prison staff and the Marshals. For example, on August 16, 2023, the Court was forced to adjourn a pre-trial conference after Smith

refused to comply with the Marshals' instructions while in detention at the courthouse. *See* Dkt. 266. As subsequently described to the Court by the Marshals, five deputies were required to restrain Smith during this incident. On September 6, 2023, Smith refused to attend a pre-trial conference and the Court issued an order authorizing the use of force, *see* Dkt. 276, although the force order was later cancelled after the parties jointly requested that the pre-trial conference be adjourned, *see* Sept. 6, 2023, Minute Entry. During the telephonic conference requesting this adjournment, defendant's then-counsel described Smith as having what he believed to be a "psychotic episode," and more recently his current "standby" counsel has described him to the Court as having "bipolar disorder." Def's Reply (Dkt. 307), at 2 n.2. As recently as October 6, 2023, when the defendant was found to be in possession of a contraband cellphone by prison staff, Smith physically resisted their attempts to seize the phone, resulting in his being placed in solitary confinement. Based upon this history of Smith's violent and erratic behavior, the Marshals, in addition to requesting permission to shackle Smith during trial, have more recently also requested permission to use tasers on Smith in the event such outbursts occur during trial. The fact that the Marshals have, unsolicited, made such a request clearly evidences their belief that Smith poses a substantial risk of volatile outbursts. But one can only imagine how huge the prejudice would be if the jury saw Smith being tasered by the Marshals.

The Court is convinced that Smith's behavioral challenges are the result of a genuine disability, rather than an "act" put on by the defendant. According to the Government, Smith has had "more than 20 contacts with" the psychological services at the jail where he is housed. Gov't Opp. to Oct. 30, 2023 Mot. (Dkt. 299), at 3. And Smith himself acknowledges his mental health challenges, having repeatedly averted to them in his filings with this Court demanding he be provided greater access to psychiatric services. *See, e.g.*, Def's Oct. 30, 2023 Mot. (Dkt. 296), at 3. Indeed, Smith expressly identifies the risk that a "jury might well view [Smith's] metal health condition unfavorably" as among the reasons the Court should grant a bench trial. *Id.* at 6; *see also* Def's Reply (Dkt. 307) (noting "the near certainty of juror prejudice due to Mr. Smith's mental illness").

Based upon the record in this case and the Court's experience dealing with defendant, the Court finds that there is a substantial likelihood that defendant will have angry, even violent outbursts during the course of any trial and the stress it imposes. It goes without saying that witnessing Smith become aggressive and be physically restrained (let alone tasered) would substantially prejudice the jury against him. Further, even a single such outburst will likely reveal Smith's shackles to the jury, undermining the effectiveness of the Government's proposal to conceal them.

The Government offers no real solution to the prejudice attendant on such outbursts. The Government suggests that a curative instruction to the jury might be sufficient, but as explained *infra* Section IV,

the cases upon which the Government relies are distinguishable on their face. The Government also argues that Smith should not benefit from his own past and prospective misconduct that would create the prejudicial conditions he would face in a jury trial.  But this is doubly unpersuasive, first, because Smith's "demons" do not appear to be of his own planned making, but rather reflect personality disorders he cannot easily control; and, second, because no matter what the reasons for his violence and anger, he is still entitled to a fair trial.

*Third*, to complicate matters further, Smith has invoked his constitutional right to represent himself and proceed *pro se*. *See Faretta v. California*, 422 U.S. 806, 819-20 (1975). Smith elected to do so -- notwithstanding strong warnings from the Court as to the dangers of this choice -- because Smith has extremely strong views about what he believes to be the law and about how he should be allowed to conduct his defense. So strong are these views that they have already led to the excusing of no less than five prior attorneys for Smith in this case.[4] Indeed, even prior to electing to proceed *pro se*,

---

[4]     Mr. Smith was originally represented by two attorneys that he had retained, but he had a falling out with each, and CJA counsel was subsequently appointed. See Dkt. 58; November 21, 2022, Minute Entry. With the consent of Mr. Smith, the two subsequently appointed CJA attorneys appointed to represent Mr. Smith were also granted permission to withdraw following a breakdown in their relationship with Smith. *See* Dkt. 248. Smith's most recent attorney, Jonathan Buza, was granted leave to withdraw after Smith filed a formal grievance complaint against him. *See* Dkt. 289. And Smith's last-minute request to appoint his current standby counsel as his full-time counsel (in place of his current *pro se* status) is, as already discussed in

Smith repeatedly made submissions directly to the Court on his own behalf, even though the Court had admonished Smith on multiple occasions that his submissions could only be made through counsel. *See, e.g.*, Sept. 18, 2023, Hr. Tr. (Dkt. 290). Smith's most recent attorney, Jonathan Buza, Esq., was granted leave to withdraw after Smith filed a formal grievance complaint against him in both state and federal courts, alleging that Mr. Buza wrongfully refused to file a motion raising baseless arguments that the Court had already rejected. *See* Dkt. 289. And while the Court has appointed "standby" counsel to assist Smith's *pro se* representation in the upcoming trial, past experience strongly suggests such counsel will have no more success than prior counsel in restraining Smith from personally and belligerently asserting frivolous arguments.

Based upon the Court's experience dealing with this defendant, and the Court's substantial experience conducting trials with *pro se* defendants generally, the Court finds it is extremely likely that, if there were a jury trial, it would be necessary to repeatedly admonish the defendant in front of the jury in order to prevent and address defendant's violations of the law, the rules of evidence, and court-room procedure. While this is always a risk with *pro se* defendants, that risk is particularly acute here. Not only has the defendant exhibited a marked propensity to engage in such conduct abnormal even

_____

footnote 1, *supra*, an obvious ploy to obtain an unwarranted adjournment and not a serious renunciation of his *pro se* status.

for a defendant who has elected to proceed *pro se*, but, given the Court's determination, *supra*, that the defendant must remain shackled throughout the trial, the Court will be unable to effectively resolve these issues through sidebars out of the presence of the jury, both because moving the defendant will be cumbersome and because doing so would expose the jury to defendant's restraints. The repeated public admonitions of defendant that will invariably result from a jury trial further risk prejudicing any jury against Smith.

The fact that Smith intends to represent himself personally at trial (as he has done, in effect, throughout this case, even when nominally represented by counsel) exacerbates the substantial risk of prejudice already attendant because of the two other issues discussed above. To begin with, the fact that Smith will be conducting his own defense makes it even more likely that the jury will be exposed to his temperamental demeanor and, conversely, his mental health challenges.

Furthermore, it is difficult to see how Smith will effectively conduct his own defense without alerting the jury to the fact that he is in restraints. The Government suggests that the restraints can remain concealed, even if Smith represents himself, if both Smith and the prosecution are required to conduct witness examinations from a seated position at counsel's table. *See* Gov't Opp. (Dkt. 306), at 5. The Court is doubtful that such an approach will prove practical – even if not seen when the jury moves in and out of the court room, it is hard to imagine that a canny juror will not get suspicious having never once seen defendant stand up during a two-week trial -- and more

fundamentally, the requirement that the defendant remain seated and constrained to counsel's table burdens his constitutional right to confront the witnesses against him. *Cf. Cohn*, 481 F. Supp. 3d at 131-32 (overruling Government's objection to bench trial based, in part, upon potential that COVID-19 precautions could burden defendant's constitutional right to testify on his own behalf during any jury trial). Further, if Smith's restraints are inadvertently revealed, it will be even more damaging to his defense than if he were represented by counsel. *See Lakin v. Stine*, 431 F.3d 959, 965 (6th Cir. 2005) ("When a shackled defendant represents himself, the jury is faced with a constant reminder that the defendant is shackled as he makes statements, questions witnesses, and introduces evidence. The presence of shackles on a man pleading his case is hard to ignore and creates a significant risk that he will be prejudged and can eviscerate the presumption of innocence guaranteed to all defendants.").

Though the Government vehemently opposes Smith's last-minute request to depart from the *pro se* election he previously made (in order to obtain an adjournment of trial), the Government inexplicably has also suggested that the Court might resolve the aforementioned concerns by simply terminating Smith's self-representation if his conduct during a jury trial proved disruptive. Gov't Opp. (Dkt. 306), at 3-4. It is true that the Court retains discretion to "terminate [the] self-representation [of] a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. But this caveat was meant to prevent "abuse [of] the dignity of

15

the courtroom," *id.*, not to preserve the Government's limited and defeasible "right" to a jury trial over the defendant's objection.[5] Smith's right to represent himself is constitutional in nature and flows directly from the Sixth and Fourteenth Amendments. *See Indiana v. Edwards*, 554 U.S. 164, 170-71, 178-79 (2008); *Faretta*, 422 U.S. at 819-20. The Government's interest in a jury trial, by contrast, arises solely from Rule 23(a) and has no constitutional underpinnings. *See Martin Linen Supply Co.*, 430 U.S. at 574 n.13 ("[T]he prosecution has no constitutionally sanctioned interest in receiving a verdict from the jury . . . ."). To the extent these interests clash, Smith's constitutional interest in representing himself plainly must prevail, notwithstanding the qualified nature of this right or Smith's own tactical equivocations. *See Cohn*, 481 F. Supp. 3d at 131 (noting that, in deciding whether to overrule the Government's objection to a bench trial, "[c]ourts have considered whether a government objection to nonjury trial results in an unfair infringement on the exercise of constitutional rights . . . ."); *cf. Lewis*, 638 F. Supp. at 579 (overruling Government's objection to bench trial where jury trial would violate defendant's First Amendment rights).

---

[5]     Indeed, the case *Faretta* cited for this proposition, *Illinois v. Allen*, 397 U.S. 337 (1970), expressly acknowledged that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case" and "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id.* at 343. In the exercise of its discretion, the Court believes the best way to manage defendant's "contumacious" behavior is to simply hold a bench trial.

Even were the Court permitted to override Smith's decision to represent himself on the grounds suggested by the Government (thereby occasioning the very delay that the Government elsewhere opposes), or accede to Smith's last-minute request to have his standby counsel appointed as his full-time counsel, it is doubtful that doing so would ensure that Smith receives a fair trial. As noted, Smith has demonstrated a marked inability to work effectively with appointed counsel, and it is thus unclear whether, even if the Court were to require the use of appointed counsel, Smith's counsel would be able to effectively conduct Smith's defense consistent with her or his ethical obligations. *See Faretta*, 422 U.S. at 834 ("[W]here the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him.").

In sum, each of the aforementioned factors -- a violent and mentally troubled defendant, prone to impermissible outbursts, who will need to be shackled and who will be representing himself (whether formally or in fact) -- is alone sufficient to justify overruling the Government's objection to a bench trial. And the confluence of these factors in this exceptional case creates a massive risk of prejudice that conducting a bench trial is uniquely capable of resolving. Accordingly, the Court finds that proceeding with a jury trial solely on the basis of the Government's unpersuasive objection to a bench

trial would create an exceptional and unavoidable risk that the defendant will be denied the right to a fair trial.

**IV.**

A bench trial would substantially eliminate all of the above concerns. The Court is familiar with Smith's mental health issues and can simply disregard them, as will the Court disregard the existence of shackles. So why does the Government refuse its consent? The Government has declined to say, as is its right. *See Singer*, 380 U.S. at 37. Nonetheless, the absence of any justification for the Government's objection remains relevant to the analysis. Beyond the inadequate remedial measures proposed by the Government, addressed above, the Government appears to simply argue that any residual prejudice is insufficient to deny the defendant a fair trial. *See* Gov't Opp. (Dkt. 306) at 3-5. To support this contention, the Government cites a variety of cases where the court denied a defendant's request for a mistrial on facts the Government asserts were even more prejudicial than those here. *Id.*

The Government's argument fails, and the cases it cites are distinguishable, not only because most of these cases involved situations in which the defendant had demanded a jury trial, but also because, more generally, the determination of whether a defendant has received a fair trial necessarily depends upon the relief requested by the defendant and the availability of alternative procedures. "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*

*v. Eldridge*, 424 U.S. 319, 334–35 (1976) (internal quotation marks omitted). Rather, determining whether the dictates of due process are satisfied requires a weighing of both the public and private interests at stake. *See id.* ("[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004) ("[T]he process due in any given instance is determined by weighing the private interest that will be affected by the official action against the Government's asserted interest, including the function involved and the burdens the Government would face in providing greater process." (internal quotation marks omitted)).

The Government cites several cases that "declined to grant mistrial applications following a defendant's outburst in front of a jury, even in cases where defendants had to be physically restrained by the Marshals or engaged in such sustained, disruptive behavior that they were removed from the courtroom." Gov't Opp. (Dkt. 306), at 4. But those cases do not stand for the broad proposition that, following such an outburst, a curative instruction directing the jury to ignore it is sufficient to eliminate the risk of prejudice. Rather, those cases -- which, it must again be emphasized, involved defendants who had declined to waive their right to a jury trial -- rest their holdings upon the absence of any better alternative. Where the defendant has elected a jury trial and then created the potential prejudice through his own conduct, granting the defendant's request

for a mistrial at best gives a defendant a free do-over of any trial the defendant believes is going poorly, and at worse effectively requires dismissal of the indictment if there is no way to prevent similar conduct at future trials. The Government thus has a substantial interest in allowing the trial to proceed in such circumstances, an interest that, in the instant case, is entirely obviated by allowing the case to proceed as a bench trial.

The lead case cited by the Government, *United States v. Bentvena*, 319 F.2d 916 (2d Cir 1963), neatly illustrates this point. In that case, one of the defendants engaged in repeated, disruptive conduct throughout the course of trial. "[T]he trial judge instructed the jury to ignore the outbursts each time they occurred" and took steps to prevent their repetition, but refused to declare a mistrial. *Id.* at 929-31. The Second Circuit affirmed, finding "[t]he judge did all in his power to minimize the[] effect" of these outburst. *Id.* This holding was not rooted in any conclusion that the curative instruction completely eliminated the prejudice, but instead was based on the finding that the judge, faced with defendant's election of a jury trial, did all he could under the circumstances. *See id.*[6]

---

[6] In addition to asking the court to declare a mistrial, certain of the defendants in *Bentvena* also asked that their case be severed from that of the particular defendant who was being disruptive. *Id.* at 930-31. However, the trial judge denied that request after finding that the disruptive conduct was "deliberate and calculated to disrupt the trial" to the benefit of all defendants. *Id.* at 932. Therefore, to the extent there was an alternative short of declaring a mistrial, this intentional conduct rendered it similarly unpalatable.

The due process balance shifts fundamentally where, as here, the defendant has agreed to waive his right to a trial by jury. In such circumstances, another method of avoiding the prejudice to defendant -- other than repeated and potentially fruitless do-overs -- becomes available, and the Government's stake in the controversy contracts to the far more limited interest in having a trial before a jury versus a judge.

The Government here has declined to articulate a specific interest in having a trial by jury in this case. While, as noted, they are not required to do so, *Singer*, 380 U.S. at 37, where it is crystal clear, as here, that a bench trial, rather than a jury trial, is the "most likely to produce a fair result," *id.* at 36, the Government's insistence upon the inferior form of adjudication violates defendant's due process rights.

## V.

The Court remains mystified why the Government has refused to consent to a bench trial in this case. It cannot be that the Government has a policy of never consenting to criminal bench trials; indeed, this judge has in recent years conducted such trials with the Government's consent,[7] as have his colleagues.[8] The Court is not yet

---

[7]    *See United States v. Rosen*, 716 F.3d 691, 694 (2d Cir. 2013); *Steele v. United States*, 2005 WL 704868, at *3 (S.D.N.Y. Mar. 29, 2005).

[8]    *See, e.g.*, *United States v. Sialeu*, 524 F. App'x 734, 735 (2d Cir. 2013); *United States v. Pouryan*, 628 F. App'x 18, 20 (2d Cir. 2015); *United States v. Libous*, 645 F. App'x 78, 79 (2d Cir. 2016);

forced to the conclusion that the Government simply wants to parade Mr. Smith, with all his troublesome tendencies, in front of a jury, knowing it will prejudice him and make conviction more likely. But even if this is not the case, the Court finds the Government's unexplained insistence upon a jury trial in this case both striking and troubling. *See generally United States v. Allen*, 644 F. Supp. 2d 422, 431 (S.D.N.Y. 2009) (noting the "special role" prosecutors have in our system of justice "not solely to advocate for the guilt of the defendant" but also to seek "truth and fairness"). In any case, it is the Court's duty to guarantee Mr. Smith a fair trial, and thus, for the forgoing reasons, the defendant's request for a bench trial is hereby granted, the Government's objection is overruled, the defendant's latest request for an adjournment is denied, and the trial will go forward, as scheduled, beginning on November 27, 2023 as a bench trial.

SO ORDERED.

New York, NY
November 15, 2023

_____
JED S. RAKOFF, U.S.D.J.

---

*United States v. Mazza-Alaluf*, 2011 WL 308266, at *1 (S.D.N.Y. Jan. 27, 2011).