UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    -v-<br><br>JATIEK SMITH et al.,<br><br>            Defendants. | 22-cr-352 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.:

On March 2, 2021, defendant Jatiek Smith was stopped by federal agents at Newark International Airport while returning to the United States from Jamaica. The federal agents demanded that Smith turn over his cellphone and the password to unlock it. They then manually reviewed his phone and created an electronic copy of its entire contents, all without obtaining a search warrant. Earlier in this case, Smith filed a motion to suppress all evidence obtained from this search on the grounds that the search violated his Fourth Amendment rights. *See* Mot. to Suppress (Dkt 158). In an Opinion and Order filed on May 11, 2023, the Court agreed that this warrantless copying of the entire contents of Smith's phone did not fall within the "boarder search exception," and that accordingly Smith's Fourth Amendment rights were violated, but the Court nevertheless declined to suppress the evidence, concluding that the good faith exception applied. *See* March 17, 2023, Bottom-line Order (Dkt. 183); May 11, 2023, Opinion and Order (Dkt. 219).

In a footnote to the May 11 Opinion, the Court indicated that, while Smith had not raised a Fifth Amendment challenge, the Court

1

would likely have rejected such an argument. See May 11, 2023, Opinion and Order (Dkt. 219), at 4 n.3. In response, Smith moved for reconsideration of the May 11 Opinion, this time asserting that his Fifth Amendment rights were violated when federal agents allegedly forced him to turn over the password to his cellphone. See Mot. for Reconsideration (Dkt. 227). The Court denied Smith's motion for reconsideration by "bottom line" Order, dated November 6, 2023, Dkt. 302, but promised that a written explanation of that ruling would follow in due course. The instant Opinion sets forth the reasons for that ruling. The Court assumes familiarity with the facts of this stop, which are set forth in the Court's prior Opinion. See May 11, 2023, Opinion and Order (Dkt. 219), at 3-7.

\* \* \* \* \*

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To qualify for the Fifth Amendment privilege, a communication must be [1] testimonial, [2] incriminating, and [3] compelled." Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U.S. 177, 189 (2004). The Court does not reach the question of whether Smith was in fact compelled to turn over his phone password, because it finds that the first two elements of the Fifth Amendment privilege -- that the act of providing the password was testimonial and incriminating -- are not satisfied.

For the privilege against self-incrimination to be implicated, there must be some communication or communicative act that is

"'testimonial' in character." *United States v. Hubbell*, 530 U.S. 27, 34 (2000) ("The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character."). So, for example, the privilege does not extend "to the [compelled] giving of blood samples, to the giving of handwriting exemplars [or] voice exemplars, or to the donning of a blouse worn by the perpetrator." *Fisher v. United States*, 425 U.S. 391, 408 (1976). "The act of exhibiting such physical characteristics is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief." *Hubbell*, 530 U.S. at 35. On the other hand, the Fifth Amendment privilege is not limited to speech as such. The privilege also protects against compelled incriminating acts that themselves have some "communicative aspects of [their] own." *Fisher*, 425 U.S. at 410. For example, if a criminal defendant is forced to sign a written confession, she is not literally testifying, but compelling the defendant to affix her signature to the document would nevertheless violate the Fifth Amendment.

The case law policing the line between testimonial and non-testimonial conduct has developed largely in the context of document subpoenas propounded upon criminal defendants. In *Fisher v. United States*, the Supreme Court held that the <u>contents</u> of incriminating <u>documents</u> sought through a subpoena -- which were created prior to the issuance of the subpoena -- were not themselves testimonial, but also noted that the <u>act</u> of compliance with a subpoena could be testimonial.

3

425 U.S. at 410 (noting that the act of identifying responsive documents "has communicative aspects of its own, wholly aside from the contents of the papers produced"). Specifically, by complying with a subpoena, a defendant "tacitly concedes the existence of the papers demanded," that the papers are in the "possession or control" of the defendant, and that the produced documents are, in fact, those requested in the subpoena (i.e. that they are authentic). *Id.* The *Fisher* Court thus found the compelled act of producing documents has some testimonial aspects and could raise Fifth Amendment concerns. *Id.*; *see also Hiibel* 542 U.S. at 189 ("[T]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." (quotation omitted)).

At the same time, the *Fisher* Court acknowledged a limitation on this so-called "act of production" doctrine, finding that, on the facts of that case, the defendant's Fifth Amendment rights had not been violated because "[t]he existence and location of the papers [were] a foregone conclusion and the [defendant] add[ed] little or nothing to the sum total of the Government's information by conceding that he in fact ha[d] the papers." *Fisher*, 425 U.S. at 411. "Thus, because these communicative elements -- (1) the existence of the documents, (2) the [defendant's] possession or control of the documents and (3) the authenticity of the documents -- were a foregone conclusion, compliance with the summons became a 'question . . . not of testimony but of surrender.'" *United States v. Greenfield*, 831 F.3d 106, 115 (2d Cir. 2016) (quoting *id.*).

This limitation to the act-of-production protection, which has come to be known as the "foregone conclusion" doctrine, stems from the requirement that a communication not only be testimonial but also incriminating. "The Fifth Amendment prohibits only compelled testimony that is incriminating." *Hiibel*, 542 U.S. at 189. The bar for testimony to be incriminating is not high: "[T]he Fifth Amendment privilege has been found to extend not only to answers that are directly incriminatory but also to those that, while not themselves inculpatory, 'would furnish a link in the chain of evidence needed to prosecute the claimant.'" *Greenfield*, 831 F.3d at 114 (quoting *Ohio v. Reiner*, 532 U.S. 17, 20 (2001)). But where it is a "foregone conclusion" that (a) the subpoenaed documents exist, (b) that the defendant controls the documents, and (c) that the documents are authentic, the testimonial aspect of a defendant's act of production is not incriminating, and the defendant's Fifth Amendment privilege is not violated. *See Fisher*, 425 U.S. at 411 (suggesting that, where the act of production "adds little or nothing to the sum total of the Government's information," then "by enforcement of the summons no constitutional rights are touched" (internal quotation marks omitted)).

The Second Circuit has not addressed how the act of production and foregone conclusion doctrines apply in the context of compelled decryption of an electronic device. However, the Eleventh Circuit -- the only federal appellate court to rule on the question -- has suggested that for the foregone conclusion doctrine to apply to the compelled decryption of a hard drive, "the Government [must] show with

5

'reasonable particularity' that, at the time it sought to compel the act of production, it already knew of the materials" on the electronic device. *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1346 (11th Cir. 2012). This "reasonable particularity" requirement comes from cases in the document subpoena context that hold that a subpoena must describe the location and existence of the documents sought with "reasonable particularity," such that the subpoena strips the act of compliance of its incriminating, testimonial character. *Greenfield*, 831 F.3d at 116 (quoting *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993)).

This Court respectfully disagrees with the Eleventh Circuit. Specifically, this Court finds that importing the "reasonable particularity" requirement from the document subpoena context to the compelled decryption context in this manner is inappropriate, in that it fails to account for the differing testimonial character of the act of decrypting a device. Unlike the act of responding to a subpoena, the act of physically unlocking a smartphone or providing the password does not communicate anything about what files exist on the phone, whether the files were created by the defendant, or whether the files are authentic. Rather, the testimonial significance of unlocking a cellphone or providing the password is the implied statement: "I am the person who knows the password for this phone." If the defendant's ownership of the phone or his possession of the password are in doubt, compelling the defendant to decrypt the device may be an incriminating

6

testimonial act. But if the Government can independently show the phone belonged to the defendant and that the defendant knew the password, the foregone conclusion doctrine applies, and the Fifth Amendment is not violated by the act of compelled decryption. *See* Orin S. Kerr, *Compelled Decryption and the Privilege Against Self-Incrimination*, 97 Tex. L. Rev. 767, 782-85 (2019) (persuasively arguing for such a rule). This approach is consistent with that adopted by the highest courts of Massachusetts and Illinois. *See People v. Sneed*, --- N.E.3d ---, 2023 IL 127968, ¶ 104 (Ill. 2023) ("[F]or the [foregone conclusion doctrine] to apply, the State must establish that, at the time it sought the act of production, it knew with reasonable particularity that (1) the passcode existed, (2) the passcode was within defendant's possession or control, and (3) the passcode was authentic."); *Commonwealth v. Jones*, 117 N.E.3d 702, 711 (Mass. 2019) ("The Commonwealth must therefore establish that a defendant knows the password to decrypt an electronic device before his or her knowledge of the password can be deemed a foregone conclusion under the Fifth Amendment."); *see also United States v. Spencer*, 2018 WL 1964588, at *3 (N.D. Cal. Apr. 26, 2018) ("[T]he government need only show it is a foregone conclusion that Spencer has the ability to decrypt the devices.").

Applying this rule here, it is clear that Smith's Fifth Amendment rights were not violated because the Government knew that Smith was

the owner of the phone and that Smith knew the password to unlock it.[1] The phone was on Smith's person at the time of the stop and there is no evidence that Smith attempted to deny ownership. This is consistent with a contemporaneous Department of Homeland Security report describing the incident. *See* Dkt. 230-2 ("SA Kew noticed SMITH's phone was on the counter in front of SMITH and detained it. SMITH got irate and began to yell asking why we're detaining his phone." (emphasis added)). As for Smith's knowledge of the password, Smith concedes in his motion and accompanying declaration that he used the cell phone in front of the CBP agents before they ever asked for the password, thereby admitting his knowledge of the password. Mot. for Reconsideration (Dkt. 227), at 3; Smith Decl. (Dkt. 226-2) ¶ 9(d). Therefore, the Court finds that the foregone conclusion doctrine applies, and Smith's Fifth Amendment rights were not violated.

SO ORDERED.

New York, NY
December 13, 2023

JED S. RAKOFF, U.S.D.J.

---

[1] An open question under the foregone conclusion doctrine is the standard of proof the Government must satisfy. Some courts have adopted a preponderance of the evidence standard, whereas others require clear and convincing evidence. *See* Orin S. Kerr, *Compelled Decryption and the Privilege Against Self-Incrimination*, 97 TEX. L. REV. 767, 789 (2019). The Court need not resolve this question because the parties do not address it and, on the facts of this case, both standards would be satisfied.